Phonacelle HANDY et al., Appellants,

v.

GENERAL MOTORS CORPORATION,
Appellee.

Maxine HERZOG et al., Appellants,

v.

GENERAL MOTORS CORPORATION,
a corporation of the State of
Delaware, et al., Appellees.

Nos. 73–1462, 73–2246.

United States Court of Appeals,
Ninth Circuit.

May 7, 1975.

Herbert D. Sturman and Richard C. Voorhies, Los Angeles, Cal., for appellants.

O'Melveny & Myers, Los Angeles, Cal., and William D. Keller, U. S. Atty., for appellee.

Before BARNES, HUFSTEDLER and GOODWIN, Circuit Judges.

PER CURIAM:

The district court dismissed two actions seeking damages and injunctive relief claimed under the National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. § 1381 et seq. (the Act), and the plaintiffs appeal.

Plaintiffs are purchasers of Chevrolet automobiles who claim their cars lost value because of defective assembly. They demanded money damages for the "excess depreciation" after the defect was discovered. They also prayed for injunctions compelling General Motors (GM) to make repairs and the National Highway Traffic Safety Administration (NHTSA) to cause General Motors to

furnish additional[1] notification of defect to vehicle owners. *See* 15 U.S.C. § 1402.

■■ The district court correctly ruled that the plaintiffs may not, by combining their claims with those of similarly situated purchasers, aggregate their damage demands to reach the $10,000 jurisdictional amount required by 28 U.S.C. § 1332. *See* Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); Snyder v. Harris, 394 U.S. 332, 335, 338, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).

The appellants argue alternatively that jurisdiction should be based upon 28 U.S.C. § 1337 and the terms of the Act

---

1. The notice sent to purchasers of record reads as follows:

"This notification applies to 1966 model Chevrolet passenger cars equipped with a V-8 engine except Chevelle and Corvette models.

"At the request of the National Highway Traffic Safety Administration, and in accordance with the notification provisions of the National Highway and Motor Vehicle Safety Act of 1966, we are sending this letter to call to your attention a possible safety hazard which exists should separation of an engine mount occur on your vehicle. If you will take your vehicle to any Chevrolet dealer, restraints will be installed at 'no cost' to you, to eliminate this possible safety hazard. We urge that you do so.

"Your vehicle is equipped with two front engine mounts; one positioned on each side of the engine. An engine mount consists of a rubber cushion sandwiched between two metal plates. It supports and cushions the engine. Since the center portion of an engine mount is made of rubber, it is subject to fatigue from constant flexing during vehicle operation and from engine compartment heat. Replacement of fatigued engine mounts is a part of vehicle maintenance which is the responsibility of the owner.

"The possible safety hazard referred to exists when, as a result of fatigue or collision damage, the rubber portion of an engine mount has separated. When this condition exists, very rapid acceleration of the vehicle from a stop or from very low speeds can result in the engine rotating sufficiently to interfere with the accelerator linkage and to cause the throttle to be held open temporarily. This can occur suddenly and without warning when the vehicle is in either forward or reverse gear. A sharp left turn during forward acceleration can increase the possibility of engine rotation if the left engine mount has separated.

"If the throttle is unexpectedly held open, prompt reaction on the part of the driver will be required to avoid temporary loss of control of the vehicle. If that should occur, the driver should turn off the ignition and apply sufficient pressure on the brake pedal to bring the vehicle to a stop.

"On power brake equipped 1966 Caprice, Impala, Bel Air and Biscayne models, engine rotation also can cause the power brake vacuum hose to become disconnected from the brake vacuum cylinder. While this can cause a loss of power assist, your vehicle will have full service hydraulic brake capacity and can be stopped by applying heavier pressure on the brake pedal to compensate for the loss of power assist.

"There is some possibility that engine rotation also may interfere with the normal operation of the clutch or shift linkage. If this occurs, additional effort may be required to shift the transmission.

"Torque reaction forces, which can cause an engine with separated mounts to rotate sufficiently to affect vehicle operation, can occur only during very rapid acceleration from a standing start or from very low speeds. It, therefore, is suggested that, except in emergency situations, you avoid such rapid acceleration from low speeds until after restraints have been installed in your vehicle by a Chevrolet dealer.

"Chevrolet has developed special restraints for installation in affected vehicles. In the event of engine mount separation, these restraints will limit engine rotation and thereby prevent interference with the normal operation of your vehicle. Installation of these restraints, therefore, will eliminate the possible safety hazard associated with engine mount separation which is described in this letter.

"Again we urge that you take your vehicle to a Chevrolet dealer promptly to have these restraints installed. A restraint will be installed on both the left and right sides of the engine at 'no cost' to you. In the great majority of cases the actual work to install these restraints will take less than 30 minutes; however, prior to taking your vehicle to a Chevrolet dealership, it is suggested the you contact the dealer's service department and determine when parts and service time will be available. Presentation of the enclosed Campaign Claim form will assist you in obtaining this service.

"If, in the future, it is necessary to replace engine mounts on your vehicle, it is important that you install only interlocking type engine mounts. This type of mount limits engine rotation if separation occurs."

itself. We disagree. The district court correctly ruled that Congress did not intend to create private rights of action in favor of individual purchasers of motor vehicles when it adopted the comprehensive system of regulation to be administered by the NHTSA. *See* Carlson v. Coco-Cola Co., 483 F.2d 279, 280–81 (9th Cir. 1973); Consolidated Freightways, Inc. v. United Truck Lines, Inc., 216 F.2d 543, 547 (9th Cir. 1954), cert. denied, 349 U.S. 905, 75 S.Ct. 582, 99 L.Ed. 1242 (1955). The cases against GM were properly dismissed for failure to state claims upon which relief could be granted.

■ Appellants assert that GM's "notice of vehicle defect" mailed to owners of defective vehicles was insufficient. Our examination of that notice convinces us that the district court was correct in its finding that the notice satisfied 15 U.S.C. § 1402(c). Thus, the NHTSA's duty under the Act terminated when GM mailed the defect notice. The Federal defendants were properly dismissed from the action.

Affirmed.