Richard LIEB, on behalf of himself and on behalf of all others similarly situated, Plaintiff,

v.

AMERICAN MOTORS CORPORATION and Jeep Corporation, Defendants.

No. 81 Civ. 1004 (RLC).

United States District Court, S. D. New York.

April 1, 1982.

Milberg, Weiss, Bershad & Specthrie, New York City, for plaintiff; Jerome M. Congress, New York City, of counsel.

Stroock & Stroock & Lavan, New York City, for defendants; David Sher, Joseph L. Forstadt, Jay P. Mayesh, Brian M. Cogan, John B. Berringer, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

This is an action alleging safety and design defects in the American Motors Jeep, model CJ–5, and fraud in the marketing of that vehicle. Defendants, American Motors Corporation ("AM") and Jeep Corporation ("Jeep"), move to dismiss the complaint for failure to state a cause of action and for failure to satisfy jurisdictional prerequisites. Plaintiff, Richard Lieb, opposes the motion and seeks to amend his complaint to strike one cause of action, to add another cause of action and a third defendant, and to modify the amount in controversy.

In July, 1977, Lieb purchased a new CJ–5 jeep from Birchard Buick in Pittsfield, Massachusetts for $5,899. Although Lieb is a New York citizen, he purchased the car for use at a home he owns in Massachusetts. He was displeased with the vehicle from the outset because of control problems. Lieb apprised Jeep of his steering difficulties after one and a half years of limited and unsatisfactory use and several attempted repairs. Jeep arranged for further servicing and modification of the automobile at a dealer near Lieb's permanent residence in Long Island. After this servicing proved inadequate, Lieb demanded that Jeep replace the vehicle or face a lawsuit.

The gravamen of the complaint is defendants' marketing the CJ–5 despite their knowledge that the vehicle is inherently unsafe for multi-purpose driving. Plaintiff contends that the 1977 through 1981 CJ–5 models were designed and manufactured in a way that created a substantial risk that they would roll over while executing moder-

ate speed turns. Defendants allegedly are and were aware of this dangerous condition, yet they disseminated promotional and sales material portraying the CJ–5 as especially safe and stable and warranting the automobile as defect free and fit for highway and off the road use.

The original complaint stated four causes of action. Lieb contended that defendants violated the Magnuson-Moss Warranty Act ("Magnuson-Moss" or "Act"), 15 U.S.C. §§ 2301–2312 (1976), by failing to comply with their written and implied warranties. A second cause of action was predicated on violations of the National Traffic and Motor Vehicle Safety Act ("NTMVSA"), 15 U.S.C. § 1381 et seq. (1976). The other two causes rested on state grounds. Lieb alleged that the defendants' warranties abridged consumer protection laws. He also asserted that the defendants defrauded him and the public by portraying the CJ–5 as an especially stable vehicle while concealing its rollover potential.

The suit is brought as a class action on behalf of all persons who have purchased 1977 through 1981 CJ–5 jeeps. Statements in the complaint imply that certain class members may have suffered physical or property damage. Lieb, however, has not experienced any such harm; his actual damages, if any, are limited to economic loss. In addition to actual damages, in the original complaint Lieb sought injunctive relief and punitive damages of $15,000.

The amended complaint drops the NTMVSA action and adds a claim under state products liability law. In addition, the amount of punitive damages sought has been enlarged to $50,000. A third defendant, American Motor Sales Corporation, has been included. Finally, the revised complaint augments the factual allegations of the original by identifying the defendants' allegedly harmful practices with greater specificity.

 Leave to amend is freely granted "unless the plaintiff is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party." *S. S. Silberblatt, Inc. v. East Har-*

*lem Pilot Block*, 608 F.2d 28, 42 (2d Cir. 1979); *see Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); F.R.Civ.P. 15(a). The proposed amendments clarify the complaint without prejudicing the defendants. Some of the changes were necessitated by plaintiff's counsel's apparent unfamiliarity with the law, such as the unavailability of a private right of action under the NTMVSA, *see Handy v. General Motors Corp.*, 518 F.2d 786, 788 (9th Cir. 1975); 15 U.S.C. § 1399(a) (1976), or the jurisdictional requirements of Magnuson-Moss, *see* 15 U.S.C. § 2310(d)(3) (1976). The amendments enhance defendants' ability to respond to plaintiff's allegations by eliminating some untenable claims and by stating with greater clarity the facts supporting the action. The new cause of action, for products liability, arises from the same facts stated in the original complaint. Its addition reflects uncertainty regarding changing legal rules and choice of state law to govern the case. Although plaintiff's counsel should have drafted the original pleadings with greater care and only after a more thorough study of the relevant laws, there is no evidence of bad faith and the case is not so advanced to render the modifications unduly tardy. Accordingly, the motion to amend will be granted.

## I. The Magnuson-Moss Claim

The Magnuson-Moss Act authorizes consumers to sue warrantors "for damages and other legal and equitable relief" for failure to comply with any written or implied warranty. 15 U.S.C. § 2310(d)(1) (1976). The action may be brought in state or federal court, 15 U.S.C. § 2310(d)(1)(A)–(B) (1976), but the Act restricts federal court jurisdiction to only those suits satisfying three requirements. The amount in controversy for any single claim must be at least $25. For all claims aggregated, the amount in controversy, exclusive of interest and costs, must equal or exceed $50,000. Finally, to maintain a class action, at least one hundred plaintiffs must be named. 15 U.S.C. § 2310(d)(3) (1976); *see, e.g., In re General Motors Corp. Engine Interchange Lit.*, 594

F.2d 1106, 1114 n.2 (7th Cir. 1979), *cert. denied sub nom. Oswald v. General Motors Corp.*, 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979); *Watts v. Volkswagen Artiengesellschaft*, 488 F.Supp. 1233, 1235–36 (W.D.Ark.1980).

### A. Class Claims

Although the lawsuit is captioned as a class action, only one plaintiff, Richard Lieb, is named in the complaint. Lieb attempts to avoid the unequivocal requirements for bringing a class action under Magnuson-Moss by asserting that he need not name other plaintiffs until class certification is sought. In addition, he seeks court endorsement of a proposal to solicit potential class members through an extensive advertising campaign. The wisdom and even the legality of such a program is questionable, but these issues cannot be considered because jurisdiction over the class action claim is clearly lacking.

■ "Jurisdiction is to be determined as of the commencement of suit." *Wigand v. Flo-Tek, Inc.*, 609 F.2d 1028, 1032 (2d Cir. 1979); *see Smith v. Sperling*, 354 U.S. 91, 93 n.1, 77 S.Ct. 1112, 1113 n.1, 1 L.Ed.2d 1205 (1957). A court cannot superintend a prospective plaintiff's activities designed to satisfy jurisdictional prerequisites after the complaint is filed. The complaint is deficient measured against the explicit and unambiguous statutory mandate and must be dismissed as a class action. *Barr v. General Motors Corp.*, 80 F.R.D. 136, 139 (S.D.Ohio 1978), relied on by Lieb to support his argument that he need not meet the 100 name requirement prior to class certification, provides no justification for such delay. That court dismissed a Magnuson-Moss class action because a 100 names had not been listed at the time of certification. *See id.* Although dicta implied that certification was the appropriate occasion to apply the hundred plaintiff requisite, the court suggested no reason to depart from the rule that statutorily imposed jurisdictional requirements must be satisfied at the time that jurisdiction is invoked or challenged. *See Watts v. Volkswagen Artiengesells-*

*chaft, supra,* 488 F.Supp. at 1236 (dismissing, prior to motion for certification, class action with only two named plaintiffs).

### B. Amount in Controversy

■ Addressing Lieb's claim as an individual action, defendants contend that less than $50,000 is in controversy. In evaluating a motion to dismiss for failure to satisfy the jurisdictional amount, the sum claimed by the plaintiff controls if the claim is made in good faith unless the defendant shows "to a legal certainty" that the claim is inadequate. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). To fulfill the $50,000 requirement, Lieb relies on his amended claim for punitive damages and his prayer for an injunction. Defendants contest the availability of either punitive or injunctive relief and assert that under Magnuson-Moss Lieb is limited to actual damages, an amount that cannot exceed the purchase price of the car.

#### 1. Punitive Damages

■ The use of punitive or exemplary damages to satisfy amount in controversy requirements triggers special judicial scrutiny. *See Zahn v. International Paper Company*, 469 F.2d 1033, 1033 n.1 (2d Cir. 1972), *aff'd on other grounds*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Novosel v. Northway Motor Car Corp.*, 460 F.Supp. 541, 545 (N.D.N.Y.1978). The court must examine the claim to ascertain whether the law allows such damages; jurisdiction, however, is not defeated unless the court is certain that plaintiff cannot recover the amount demanded. *Tackett v. Kidder*, 616 F.2d 1050, 1053 (8th Cir. 1980); *Beckerman v. Sands*, 364 F.Supp. 1197, 1200–01 (S.D.N.Y.1973) (Lasker, J.).

The availability of punitive damages under Magnuson-Moss has not been authoritatively determined. Legislative guidance, unfortunately, is entirely lacking. Congress was silent on the scope and measurement of damages under the Act. No court has awarded exemplary damages for Magnuson-Moss violations, and at least one

court has refused to allow them. *See Novosel v. Northway Motor Car Corp., supra,* 460 F.Supp. at 545. On the other hand, the Court of Appeals for the Seventh Circuit has stated in dicta that in certain circumstances exemplary damages may be recoverable. *See In re General Motors Engine Interchange Lit., supra,* 594 F.2d at 1132 n.44.

In the absence of an explicit Congressional mandate, courts have sought guidance from applicable state breach of warranty laws. *See id.; Novosel v. Northway Motor Car Corp., supra,* 460 F.Supp. at 545. The parties dispute whether New York or Massachusetts law controls, but decision on this difficult choice of law question can be postponed because neither state would allow Lieb punitive damages for a warranty breach.[1]

Lieb apparently concedes that Massachusetts strictly limits the award of punitive damages to circumstances explicitly authorized by statute. *See Caperci v. Huntoon,* 397 F.2d 799, 801 & n.2 (1st Cir.), *cert. denied,* 393 U.S. 940, 89 S.Ct. 299, 21 L.Ed.2d 276 (1968); *City of Lowell v. Massachusetts Bonding & Ins. Co.,* 313 Mass. 257, 47 N.E.2d 265, 272 (1943); Note, *Punitive Tort Damages in New England,* 41 Boston U.L.Rev. 389, 390 (1961). Massachusetts has adopted the Uniform Commercial Code ("U.C.C.") to regulate commercial transactions and although the state has modified several portions of the code, no provision has been made for exemplary damages in contract actions. *See* Mass. Ann.Laws ch. 106, § 2–714 (Law. Co-op).

New York courts, by contrast, have assessed punitive damages in actions involving warranty or other contract breaches. Close analysis of these awards, however, reveals that they have been given only when defendants' behavior constituted a fraudulent act amounting to an independent tort. *See Hoche Productions, S. A. v. Jayark Films Corporation,* 256 F.Supp. 291, 293–94, 296 (S.D.N.Y.1966) (Bonsal, J.) (punitive damages awarded when false representations made in course of breach consti-

tuted independent fraudulent act); *Walker v. Sheldon,* 10 N.Y.2d 401, 223 N.Y.S.2d 488, 490, 179 N.E.2d 497, 498 (1961) (punitive damages appropriate because fraudulent inducement to enter into contract amounted to "larcenous scheme"). The courts have carefully distinguished the action on the contract or warranty, which is limited to actual damages, from the action for fraud, which may give rise to exemplary damages. *See Triangle Underwriters, Inc. v. Honeywell, Inc.,* 604 F.2d 737, 746–48 (2d Cir. 1979) (plaintiff alleged "fraud that was extraneous to the contract, rather than a fraudulent non-performance of the contract"); *Walker v. Sheldon, supra,* 223 N.Y. S.2d at 490, 179 N.E.2d at 498 (contract action alone provides inadequate remedy for fraud in inducement); *cf. Victorson v. Bock Laundry Machine Co.,* 37 N.Y.2d 395, 400, 373 N.Y.S.2d 39, 41, 335 N.E.2d 275, 277 (1975) (discussing different grounds of tort and contract liability). Punitive damages have been denied and tort claims dismissed when the claim for fraud merely restates the contract breach. *See Iandoli v. Asiatic Petroleum Corp.,* 57 A.D.2d 815, 395 N.Y. S.2d 15, 15 (1st Dep't 1977); *Miller v. Volk & Huxley, Inc.,* 44 A.D.2d 810, 355 N.Y.S.2d 605, 606–07 (1st Dep't 1974). Admittedly, the line between tort and contract is indefinite and eroding. Despite the imprecise boundary between the two, New York courts have consistently articulated a tort basis for punitive awards and as steadfastly refused to allow such awards when merely contract issues were in dispute. In breach of warranty suits, which is all that Magnuson-Moss permits, damages ordinarily are limited to the difference between the value of the goods accepted and the value they would have had if they had been as warranted. *See* N.Y.U.C.C. Law § 2–714(2) (McKinney); *Noreli Industries, Inc. v. Kleinert's, Inc.,* 57 A.D.2d 792, 394 N.Y.S.2d 687, 688 (1st Dep't 1977). Therefore, regardless of whether New York or Massachusetts supplies the measure of damages under the Magnuson-Moss claim, Lieb will not be able to utilize the punitive damages he seeks to satisfy the $50,000 jurisdictional amount.

---

1. The choice of law issue is discussed more fully *infra,* at 135–36.

## 2. Injunctive Relief

Lieb contends that included within the "equitable relief" authorized by the Act, § 2310(d)(1), is the issuance of an injunction and that the injunction he seeks has a value exceeding $50,000. In particular, Lieb requests an order that directs defendants to affix warning stickers to jeeps to advise their owners of the rollover danger, and that requires defendants to disclose to plaintiff their knowledge of the handling and other safety defects of the vehicle.

 Where injunctive relief is sought, the value of the right protected or the injury avoided establishes the amount in controversy. *Kheel v. Port of New York Authority*, 457 F.2d 46, 49, (2d Cir.), *cert. denied*, 409 U.S. 983, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972); *Tron v. Condello*, 427 F.Supp. 1175, 1185 (S.D.N.Y.1976) (Conner, J.). In this circuit, the amount ordinarily is measured from the plaintiff's standpoint. *Kheel v. Port of New York Authority, supra*, 457 F.2d at 49. Although good faith allegations of the value of an injunction satisfy the amount in controversy requirements unless shown to a "legal certainty" to be inadequate, *Tron v. Condello, supra*, 427 F.Supp. at 1185, indirect harms, if highly speculative, may not count towards the jurisdictional amount, *see Kheel v. Port of New York Authority, supra*, 457 F.2d at 49.

 Defendants question whether Magnuson-Moss authorizes courts to issue injunctions to private litigants. The statute neither clarifies nor restricts the "equitable relief" it makes available in consumer actions. Defendants point to § 2310(c), which empowers the United States Attorney General to seek injunctive relief, as an indication that Congress intended to limit such remedies to government prosecuted suits. Although this argument is not without some plausibility, it is inconsistent with the general rule that absent express limitations a statute will not be interpreted to narrow the full scope of equitable remedies, including injunctions. *See, e.g., Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 291, 80 S.Ct. 332, 334, 4 L.Ed.2d 323 (1960); *In re Letourneau*, 559 F.2d 892, 894 (2d Cir. 1977). The language authorizing consumer actions contains no qualification concerning the type of equitable relief available and it would be a misuse of the court's power to write such restrictions into the statute.[2] Moreover, § 2310(c) can be read to support plaintiff's position more readily than defendants' interpretation. Congress used the comprehensive term "equitable relief" when referring to private actions, and a narrower subset of that relief when referring to attorney general suits. It would be unreasonable to interpret Congress's broad mandate to the consumer more narrowly than its precise authorization to the attorney general. If Congress desired to make the attorney general's power exclusive, such intention could easily have been expressed. In the absence of such expression, the statute is interpreted best as providing overlapping remedial mechanisms.

To state the general proposition that private parties may be entitled to injunctions under Magnuson-Moss does not end the inquiry into the issue of jurisdictional amount. Lieb must make a credible showing that the injunction would have a value of $50,000.

 Lieb's prayer that the court order defendants to affix warning stickers to jeeps is of small value to him. Lieb is personally familiar with the several dangers of the jeep and does not allege that he intends to purchase a new CJ–5. His claim that he uses roadways that jeeps frequent and is particularly likely to be toppled upon by another owner's naive use of a CJ–5 is as frivolous as it is novel, and cannot seriously be entertained. No benefit would flow to Lieb from an order directing defendants to notify current and prospective owners of

---

**2.** Contrary to defendants' argument, the Act does not limit equitable relief in private suits to repair, replacement, or refund. These remedial terms appear in the definitional section, 15 U.S.C. § 2301 (1976), and refer to the actions a warrantor must agree to perform if his warranty is to comply with the Act. *See* 15 U.S.C. § 2304(a)(1) (1976); H.R.Rep.No.1107, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 7702, 7717, 7720.

safety defects in the CJ–5 and thus such an order cannot contribute to the jurisdictional amount.[3]

■ The second branch of Lieb's request for injunctive relief seeks disclosure of defendants' knowledge of the handling characteristics of the CJ–5. This information, as distinguished from a mere warning sticker, would be of value to Lieb because it would allow him to make a reasoned decision whether and how to use his vehicle. Absent such knowledge, Lieb contends he cannot drive the automobile without serious risk of accident. Because the resulting injuries could easily inflict more than $50,000 damages on Lieb, he considers this disclosure alone sufficient for jurisdictional purposes.

The value of the remedy cannot be set from this worst case scenario. If Lieb is genuinely concerned about the safety of the vehicle, and can only operate it prudently with information he does not possess and seeks from the defendants, then he has some duty to mitigate potential harm by not driving the car. Although this would render the vehicle useless, the consequent damage would not exceed its purchase price, an amount far below the Act's jurisdictional threshold. The caveat against including speculative harms in the measurement of the amount in controversy, *see Kheel v. Port of New York Authority, supra,* 457 F.2d at 49, has special vigor when the exercise of ordinary prudence can avert any chance of catastrophe. Accordingly, the request for an injunction does not fulfill the statutory jurisdictional requirements.

To summarize, the Magnuson-Moss cause of action is dismissed as a class action for failure to name 100 plaintiffs. Dismissal of the class action necessitates denial of the motion to approve plaintiff's program to solicit additional plaintiffs. Because less than $50,000 is in controversy, the individual suit is dismissed. Only actual damages are available, and that amount is limited to the difference between the value of the CJ–5 as accepted and its value if it had been in the condition warranted. Whatever equitable relief may be available cannot exceed the cost of the automobile. Aggregating all that might be at issue in this action falls below the jurisdictional requirement.

## II. Claims Arising Under State Law

Lieb argues that regardless of the vitality of the Magnuson-Moss claim, his state law based causes of action are within the court's diversity jurisdiction. Defendants concede that the parties are of diverse citizenship, but they contest Lieb's allegation that more than $10,000 is in controversy.

■ At the outset, the court must decide the appropriate law to guide the measurement of available damages. To do so, the court must observe the choice of law rules of the forum state. *Loebig v. Larucci,* 572 F.2d 81, 84 (2d Cir. 1978) (*citing Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Because of the incomplete facts available at this stage of the litigation and of the unsettled condition of the law, a New York court's decision is not readily ascertainable.

The Second Circuit and the New York Court of Appeals have applied slightly disparate standards to resolve conflicts in this state's forums. The Second Circuit has perceived the New York Court of Appeals as exhibiting unwavering determination "to afford New York tort plaintiffs the benefit

---

**3.** In an independent action initiated by the Federal Trade Commission ("FTC") to investigate AM's marketing procedures and jeep handling characteristics, AM has proposed "to place a prescribed sticker on the windshield of all new Jeep CJ's warning owners of the Jeep's handling and maneuvering limitations" and to disseminate to current owners an information supplement concerning proper driving technique for the automobile. *See* 46 Fed.Reg. 59,- 258–59,273 (Dec. 4, 1981) (proposed consent agreement). This agreement, if it becomes final, admits nothing and as an evidentiary matter cannot support Lieb's claim. *See, e.g., Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893–94 (2d Cir. 1976); Fed.R.Evi. 408, 410; 46 Fed.Reg. 59,259 (Dec. 4, 1981) ("This agreement is for settlement purposes only and does not constitute an admission ...").

of New York law more favorable than the law of the *lex loci delictus* whenever there is a fair basis for doing so." *O'Connor v. Lee-Hy Paving Corp.*, 579 F.2d 194, 205 (2d Cir.), *cert. denied sub nom. Gillespie v. Schwartz*, 439 U.S. 1034, 99 S.Ct. 638, 58 L.Ed.2d 696 (1978). The Second Circuit's survey of the Court of Appeals decisions that underlie the Circuit's finding that the citizen-plaintiff favoring test is the correct New York choice of law rule draws from a limited sample composed exclusively of wrongful death actions and guest statute defenses. *See id.* Outside of this narrow range of cases, New York courts have not invariably applied New York rules to favor local plaintiffs. The Court of Appeals has stated the intention to apply *lex loci* unless its displacement would "advance the substantive law purposes [of the states involved] without impairing the smooth working of the multistate system or producing great uncertainty for litigants." *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 70, 286 N.E.2d 454, 458 (1972). The lower courts have expanded upon this command by establishing a tripartite test. This process requires review of the center of gravity of the delict and related transactions, evaluation of the interests of foreign jurisdictions in having their law applied and determination of whether anachronistic foreign regulations would unfairly restrict recovery. *See Knierermen v. Bache Halsey Stuart Shields, Inc.*, 74 A.D.2d 290, 427 N.Y.S.2d 10, 13 (1st Dep't 1980) (examine contacts to determine which jurisdiction has paramount interest in application of law; foreign jurisdiction's damage limitation reasonable); *Belisario v. Manhattan Motor Rental, Inc.*, 48 A.D.2d 477, 370 N.Y.S.2d 574, 576 (1st Dep't 1975) (center of gravity of action in foreign jurisdiction; no unfair application of archaic foreign rule).[4]

To apply this three part test will require fuller development of the facts surrounding the acts Lieb complains of. Only through an understanding of the circumstances of the alleged warranty breach, fraudulent scheme and resulting injuries can the court ascertain the center of gravity of the claim and the competing states' interests in having their law applied. The principal transaction, purchase of the Jeep, transpired in Massachusetts, but plaintiff has alleged significant contacts with other states. In advance of an evidentiary presentation, it is impossible to predict with certainty the scope or location of the alleged violations.

Relying on the allegations of the complaint as a precursor to Lieb's proof, New York and Massachusetts are the most probable candidates to supply the law governing each of the claims. Massachusetts's interest, although the most readily ascertainable because the vehicle was purchased there for use in the state, is not necessarily the most compelling because of the range of injuries alleged. Moreover, no Massachusetts defendant is threatened with liability. New York's interest is significant not only because Lieb resides here, but also because defendants advertise and market their vehicles in this state. If the CJ–5 is as inherently dangerous as Lieb contends, then New York surely has an interest in enforcing its laws against persons who knowingly introduce such defective vehicles into the state.

The final choice of law question for each cause of action must be postponed until plenary review of the evidence can be undertaken. To decide the motion to dismiss, the court will assume that either New York or Massachusetts will supply the substantive law governing the second, third and fourth causes of action.

 As discussed above, in both states damages for breach of warranty ordinarily

---

4. Each of the three causes of action arising under state law need not be resolved by reference to the law of the same jurisdiction. *See, e.g., Knieriemen v. Bache Halsey Stuart Shields, supra*, 427 N.Y.S.2d at 12–13. However, the principles guiding the choice of law in New York appear to be the same for contract and tort claims. *Compare id.* (center of gravity test for tort claim) *with Hormel International Corp. v. Arthur Andersen & Co.*, 55 A.D.2d 905, 390 N.Y.S.2d 457, 458 (2d Dep't 1977) (contract action; "With respect to both contracts and torts, the 'center of gravity', or 'grouping of contacts', theory now governs the choice of law").

are limited to the difference between the value of the goods accepted and the value they would have had if they had been as warranted. *See* N.Y.U.C.C. Law § 2–714(2) (McKinney); Mass.Ann.Laws. ch. 106, § 2–714(2) (Law.Co-op). The warranty claim, therefore, cannot satisfy the jurisdictional requirement that more than $10,000 be in controversy.

The fourth cause of action, for strict products liability, is similarly defective because Lieb alleges economic loss only.[5] Lieb paid less than $10,000 for the vehicle; even if it were found to be worthless he could not have suffered sufficient loss to trigger the court's diversity jurisdiction.

Of the three claims arising under state law, then, only the fraud action can possibly give rise to damages exceeding the jurisdictional minimum, and that claim can only do so if Lieb is entitled to punitive damages. Defendants vigorously contest whether Lieb has stated a viable cause of action for fraud and whether he may garner punitive damages.

Defendants contend that state law prevents a plaintiff from pleading simultaneous actions sounding in tort and contract based upon the same set of facts. Both New York and Massachusetts, however, do recognize that in certain circumstances fraud in inducing or breaching a contract creates a separate action in tort. *See, e.g., Hoche Productions, S. A. v. Jayark Films Corporation, supra,* 256 F.Supp. at 293–294 (false representations made in course of breach); *Walker v. Sheldon, supra,* 223 N.Y.S.2d at 490, 179 N.E.2d at 498 (inducement); Mass.Ann.Laws. ch. 231, § 85J (Law.Co-op) (fraud in sale of personal property). Defendants' citations to unsuccessful pleas of fraud in contract suits do not command a contrary conclusion, but

serve to define the line between pleadings insufficient to state a fraud claim and allegations that are adequate. Lieb alleges that defendants' behavior constitutes a fraudulent scheme perpetrated against the public that far exceeds the bounds of warranty noncompliance. His accusations are pointed and far-reaching; for example, he asserts that defendants discovered that they had developed an inherently defective vehicle and then conspired to conceal these deficiencies from the public in order to promote sales of the vehicle. These claims transcend the bounds of contract and raise a valid claim for tort.

Defendants further maintain that even if, as a general proposition, tort and contract actions can stem from the same basic transaction, the reported fraudulent inducement cases require individualized negotiation and misrepresentation as a prerequisite to the fraud suit. *See, e.g., Triangle Underwriters, Inc. v. Honeywell, Inc., supra,* 604 F.2d at 746–48; *Coolite Corp. v. American Cyanamid Co.,* 52 A.D.2d 486, 384 N.Y.S.2d 808, 810–11 (1st Dep't 1976). Nothing in those decisions supports defendants' narrow interpretation that no cause of action arises from false statements made in mass advertising campaigns. The states' condemnation of beguilement and deceit in the sale of consumer goods and sophisticated electronic equipment, *see, e.g., Triangle Underwriters, Inc. v. Honeywell, Inc., supra,* 604 F.2d at 746–48; *McGregor v. Dimou,* 101 Misc.2d 756, 422 N.Y.S.2d 806, 810–11 (Civ.Ct.N.Y. 1979); *McMahon v. M. & D. Builders, Inc.,* 360 Mass. 54, 271 N.E.2d 649, 651–53 (1971), indicates that they would not limit consumer fraud actions to circumstances involving face to face encounters. It is scarcely believable that New York or Massachusetts would hold the mass advertiser who knowingly deluded the public into acquiring in-

---

**5.** Plaintiff apparently concedes that the strict liability claim is not available in Massachusetts. The courts of New York have divided over whether a person can recover on a strict products liability theory when no physical injury has occurred. *Compare Schiavone Construction Co. v. Elgood Mayo Corp.,* 81 A.D.2d 221, 439 N.Y.S.2d 933, 936–37 (1st Dep't 1981) (finding liability) *with Hole v. General Motors Corp.,* 83 A.D.2d 715, 442 N.Y.S.2d 638 (3rd Dep't 1981) (denying liability). Because of this split and the possibility of an authoritative decision by the state Court of Appeals before the termination of this litigation, there is no need to speculate on the resolution of the dispute at this time.

trinsically unsafe automobiles to a lower standard of liability than they would apply to the shyster who tricked a neighbor into thinking a jalopy was a Rolls.

Finding that Lieb has stated a viable claim for fraud does not suffice to meet the jurisdictional requirements; he must demonstrate a plausible opportunity to recover exemplary damages. As discussed above, New York does grant such relief where "the fraud, aimed at the public generally, is gross and involves high moral culpability." *Beckerman v. Sands, supra*, 364 F.Supp. at 1201; *Walker v. Sheldon, supra*, 223 N.Y. S.2d at 490, 179 N.E.2d at 498; *see Greenspan v. Commercial Ins. Co.*, 57 A.D.2d 387, 395 N.Y.S.2d 519, 521 (3d Dep't 1977). Lieb alleges precisely such a morally reprehensible public deception that if proven could give rise to punitive damages in excess of $10,000.

If, on the other hand, the facts support application of Massachusetts Law, Lieb still might be awarded sufficient damages. Massachusetts provides treble damages for victims of the fraudulent sale of personal property. *See* Mass.Ann.Laws. ch. 231, § 85J (Law.Co-op). Defendants contend that this triple recovery would not satisfy the jurisdictional requirements because Lieb's actual damages are less than $3,333.34. To support their contention, defendants have introduced the Kelley Blue Book Auto Market Report for September and October 1981 that lists the prevailing prices for resale of used automobiles. Putting aside the appropriateness of considering such documentary evidence in a motion to dismiss, the "Blue Book" value cannot be considered accurate if Lieb's claims are taken to be true. That price would reflect a market fraudulently manipulated by defendants' withholding of information that, once disclosed, could depress resale prices. If Lieb prevails, a jury could reasonably conclude that he purchased a worthless vehicle and is entitled to a refund of the entire purchase price. Trebling this award would easily surmount the amount in controversy hurdle.

Lieb has properly alleged a cause of action in fraud with a potential recovery in excess of $10,000. Diversity of citizenship is alleged and not disputed. Accordingly, the motion to dismiss the fraud claim is denied.

### III. Pendent Jurisdiction

Among the four causes of action, only the claim for fraud fulfills the court's jurisdictional requirements. The inadequacy of the amount in controversy in the other causes does not necessarily preclude their presentation in federal court; they may be cognizable pendent to the fraud claim.

Exercise of pendent jurisdiction requires a two stage analysis to determine first, whether the court has the power to hear the pendent claims, and second, whether the court should exercise that power. *See Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800, 809 (2d Cir. 1971). A court has the power to hear claims otherwise not within its jurisdiction if they "derive from a common nucleus of operative fact[,]" and if a plaintiff "would ordinarily be expected to try them all in one judicial proceeding[.]" *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

Lieb's claims fall within the category of issues that the court may review pendent to the federal cause of action. Lieb has plead a single case based upon a coherent set of circumstances. Reliance upon different elements of the set to state each cause of action does not vitiate the court's power to exercise pendent jurisdiction. The Supreme Court, in *Gibbs*, rejected as "unnecessarily grudging[,]" the approach of *Hurn v. Oursler*, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), that required the various causes of action to be "little more than the equivalent of different epithets to characterize the same group of circumstances[,]" *id.* at 246, 53 S.Ct. at 589; *United Mine Workers of America v. Gibbs, supra*, 383 U.S. at 724–25, 86 S.Ct. at 1137–38. Lieb's claims share sufficient underpinnings to present a case that would be resolved in a single proceeding if their federal

and state character and the amount in controversy were not in issue.

Recognizing that the court has the power to hear the entire case necessitates an evaluation of whether that power ought to be exercised. This determination requires a probing analysis because different principles control the discretionary exercise of pendent jurisdiction over state claims than those controlling federal claims beyond jurisdiction because of the amount in controversy. *See Hagans v. Lavine*, 415 U.S. 528, 548, 94 S.Ct. 1372, 1385, 39 L.Ed.2d 577 (1974); Theis, *Pendent Jurisdiction Over Claims Arising Under Federal Law*, 32 Hastings L.J. 91, 105–116 (1980).

■■■■ Before electing to exercise its pendent jurisdiction powers over state claims, a court must consider the factors of "judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction[.]" *United Mine Workers of America v. Gibbs, supra*, 383 U.S. at 726, 86 S.Ct. at 1139. Lieb's state claims for breach of warranty and for strict products liability are of a piece with the fraud claim. Relegating the former claims to state court while retaining the latter claim would be inefficient and inconvenient. Trial of the fraud claim will necessitate presentation of much, if not all, of the evidence required to determine the other causes. Joinder of the pendent claims, therefore, will not unnecessarily lengthen or complicate the trial and will avoid redundant state proceedings. *See, e.g. Chatzicharalambus v. Petit*, 430 F.Supp. 1087, 1092 (E.D.La.1977). Although comity is a consideration against taking jurisdiction, *see id.*, addition of the two claims does not excessively interfere with state sovereignty since many of the more difficult issues of state law, such as choice of law and availability of punitive damages, must be determined pursuant to the fraud action, while the pendent claims (with the exception of strict products liability for economic loss in New York) involve relatively settled propositions of law. Accordingly, the court will deny the motion to dismiss the second and fourth causes of action.

■■■■ Ordinarily a claim arising under federal law must surmount a lower threshold to the exercise of pendent jurisdiction power than encountered by state claims. *See Hagans v. Lavine, supra*, 415 U.S. at 548–50, 94 S.Ct. at 1385–86; *Rosado v. Wyman*, 397 U.S. 397, 404, 90 S.Ct. 1207, 1213, 25 L.Ed.2d 442 (1970). Consolidating claims within the court's subject matter jurisdiction with claims arising under federal law but not satisfying jurisdictional statutes enhances efficiency without risking a misreading of state law or trenching upon state sovereignty. *See Hagans v. Lavine, supra*, 415 U.S. at 548, 94 S.Ct. at 1385.

■■■■ Tempering the generous exercise of discretion, however, is the risk that pendent jurisdiction, a self-conferred prerogative, will unsettle the balance among the elements of our government. Federal courts are institutions of limited competence whose authority is bounded by the Constitution and Congress. *See, e.g., Aldinger v. Howard*, 427 U.S. 1, 15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976); U.S.Const. art. III, §§ 1, 2. Expanding the pendent jurisdiction doctrine to bring federal law claims within the courts' purview trenches upon Congress's authority to specify the tribunals responsible to adjudicate claims arising under its laws. *See, e.g., Aldinger v. Howard, supra*, 427 U.S. at 18, 96 S.Ct. at 2422 (dismissing pendent party claim because of Congressional statute negating jurisdiction); *Coastal States Marketing, Inc. v. New England Petro. Corp.*, 604 F.2d 179, 187 (2d Cir. 1979) (dismissing appeal of Economic Stabilization Act of 1970 issue because Congress endowed Temporary Emergency Court of Appeals with exclusive jurisdiction); Theis, *Pendent Jurisdiction Over Claims Arising Under Federal Law, supra*, at 99–102, 116–125 (federal courts observe Congressionally imposed restrictions when asserting pendent jurisdiction). Subsequent to *Hagans*, the Supreme Court has retreated from the liberal application of pendent jurisdiction over federal causes of action and has declined federal court jurisdiction when faced with statements of Con-

gressional intent opposing such jurisdiction. *See Aldinger v. Howard, supra* 427 U.S. at 14–18, 96 S.Ct. at 2420–2422.

Although *Aldinger* was a pendent party claim, and therefore arguably less persuasive authority than *Hagans*, which permitted pendent subject matter jurisdiction over a claim below the jurisdictional amount, the Court in *Aldinger* stressed the general application of its decision: "Before it can be concluded that [pendent] jurisdiction exists, a federal court must satisfy itself not only that Art. III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence." 427 U.S. at 18, 96 S.Ct. at 2422. Moreover, the special circumstances of *Hagans*, where a federal statutory claim joined a Constitutional claim, limit its potentially broad application. Had the district court remitted the statutory component to a state tribunal, the plaintiffs would have retained a viable Constitutional issue that required convening a three judge court. By disposing of the dispute on statutory grounds, the district court avoided the encumbrance of the three judge panel and the disfavored practice of resolving a Constitutional controversy that could have been solved on narrower grounds. *See Hagans v. Lavine, supra*, 415 U.S. at 543–50, 94 S.Ct. at 1382–85.

▪ In enacting Magnuson-Moss, Congress implicitly negated pendent jurisdiction of claims made under the statute that amount to less than $50,000. Congress deliberately chose that figure to prevent Magnuson-Moss claims from inundating the federal court. *See Novosel v. Northway Motor Car Corp., supra*, 460 F.Supp. at 543–44; H.R.Rep.No.1107, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Cong. & Ad.News 7702, 7723–24. Without the $50,000 requirement, any consumer action arising under the Act could be brought in federal court under 28 U.S.C. § 1337 (1976). Retaining jurisdiction based upon a diversity

claim effectively would rewrite the amount in controversy requirement to $10,000. Once Congress has chosen a higher figure, a court may not exercise its discretionary powers to apply a lower threshold.[6]

This case presents none of the extenuating factors found in *Hagans*. Dismissing the Magnuson-Moss cause will not compel decision on Constitutional grounds or resort to a three judge court. Unlike *Hagans*, which circumvented a general jurisdictional statute, 28 U.S.C. § 1331, applicable to "all civil actions ... aris[ing] under the Constitution, laws or treaties of the United States[,]" Lieb exhorts the court to disregard the specific Congressional command that cases arising under Magnuson-Moss be heard in the first instance by state tribunals if less than $50,000 is at stake.

The decision to refuse jurisdiction is made with some difficulty because it results in the ironic situation of a federal court retaining control of claims arising under state law while remanding to state tribunals plaintiff's cause based on federal law. The irony lies in the statute, however, not in its application. Lieb has not presented a unique set of circumstances; at least one other plaintiff has satisfied diversity requirements but failed to surpass the Act's $50,000 barrier, and more cases of this kind are likely to arise. *See Fleming v. Apollo Motor Homes, Inc.*, 87 F.R.D. 408, 409–11 (M.D.N.C.1980) ($33,000 recovery sought; Magnuson-Moss claim dismissed but warranty breach action retained under diversity jurisdiction). Among other goals, Congress sought through the Act to remedy inadequacies in automobile warranties. *See* H.R. Rep.No.93–1107, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad. News 7702, 7708–09. The rising price of cars will place more litigation concerning these warranties above the $10,000 line while erosion of privity requirements will allow more consumers to bring state law

---

**6.** The action for fraud arguably places more than $50,000 in issue. Although the entire case might thus be for more than that amount, the Magnuson-Moss cause of action, standing alone, is for actual damages only. Congress's

command appears to remit suits under the Act to state court unless the Magnuson-Moss action itself is for at least $50,000, regardless of the total amount in controversy in other causes in the litigation.

grounded actions directly against manufacturers. In most instances these parties will be of diverse citizenship (except, perhaps, in the case of Michigan plaintiffs), thus placing the litigation within federal diversity jurisdiction. If Congress desires federal courts to hear these cases in their entirety, then it should amend the jurisdictional provision of Magnuson-Moss. If, on the other hand, Congress prefers that state tribunals preside over all warranty disputes for less than $50,000, it must modify the diversity jurisdiction statute. Absent one of these changes, the federal courts face seemingly conflicting mandates that can be obeyed only with the anomalous result of parallel state and federal actions.[7]

IT IS SO ORDERED.

---

7. Of course, Lieb may avoid this result and promote an efficient resolution to this lawsuit by waiving his right to the court's diversity jurisdiction and bringing all the actions in state court.