Zacharias **CHARALAMBOUS,** et ux., Appellants,

v.

**JEAN LAFITTE CORPORATION,** et al., Appellees.

No. 08–81–00210–CV.

Court of Appeals of Texas, El Paso.

May 4, 1983.

Appellees' Rehearing Denied June 1, 1983.

Adrian Young, Law Office of Norwood J. Ruiz, Galveston, for appellants.

Ross Citti, Mills, Shirley, McMicken & Eckel, Galveston, for appellees.

Before STEPHAN F. PRESLAR, C.J., and WARD and OSBORN, JJ.

## OPINION

WARD, Justice.

This is a suit by a tenant for damages arising out of the breach by the landlord of a commercial lease. The trial was to a jury which returned a verdict in the tenant's favor for $45,522.83 actual damages and

$100,000.00 exemplary damages. The defendants' motions to disregard jury findings as to damages for $5,200.00 depreciation losses and exemplary damages of $100,000.00 were sustained, leaving a recovery of $40,322.83. The trial court, on the defendants' motion for new trial, ordered a remittitur which was filed by the plaintiffs, resulting in a final judgment being entered for the plaintiffs in the amount of $22,072.83. The plaintiffs appeal, and, as reformed, we affirm.

The plaintiffs, Zacharias Charalambous and his wife, as tenants, in July, 1975, entered into a written lease with the Jean Lafitte Corporation whereby they leased for three years a portion of the first floor of the Jean Lafitte Hotel in Galveston to be used as a restaurant and nightclub. Plaintiffs then took possession of the premises, entered into business and occupied the premises until a dispute arose between the plaintiffs and the landlord's agent, Ken Fagan, who claimed that a band that played in the nightclub was disturbing the hotel guests. It was the plaintiffs' version that on January 10, 1976, at the supper hour and without warning, Mr. Fagan cut off the utilities at the restaurant and club. After some discussion, the electric power was turned back on. The gas could not be relit in the kitchen, resulting in substantial food spoilage and loss of restaurant business. The plaintiffs' then contended that about January 21, 1976, the landlord and Mr. Fagan, who became defendants in the subsequent law suit, changed the locks on the restaurant doors, ousted the plaintiffs and terminated the lease without cause.

Plaintiffs filed suit against the hotel company and Mr. Fagan for the wrongful eviction, for the food damages resulting when the defendants temporarily cut off the plaintiffs' electricity and gas service on January 10, and their damages following their eviction including their expenses in removing their business to other premises, depreciation on the value of their property as a result of their moving, their loss of profits and loss of prepaid rent. Also, among their actual damages was a claim for breach of contract with the defendants whereby the plaintiffs were to furnish food and beverages to the crew of a ship which was docked in Galveston and which crew was temporarily staying at the Jean Lafitte Hotel. For these services rendered by the plaintiffs, the defendants made a partial payment and delivered to the plaintiffs a check for the remaining balance of $2,022.83. Payment on the check was thereafter stopped by the defendants and this likewise became one of the items of damages. The plaintiffs alleged that all these various actions and breaches were willful, unlawful and malicious and that they were entitled to exemplary damages.

At trial, the plaintiffs obtained favorable findings on all issues submitted to the jury. The jury found that: (1) the defendants withheld money that was owed to the plaintiffs for providing food to the ship's crew, (2) the additional necessary sum of money which would reasonably compensate for providing the food to the ship's crew was $2,022.83, (3) the defendants' acts in temporarily cutting off the electricity and gas service on January 10 resulted in a monetary loss to the plaintiffs, (4) for that loss the plaintiffs would be entitled to the sum of $500.00, (5) failed to find that the plaintiffs allowed the playing of musical instruments on their premises in such a manner or with such volume as to reasonably annoy or disturb the guests at the Jean Lafitte Hotel, (6) failed to find that the defendants gave the plaintiffs written notice that the maintaining of a live band on their premises was in violation of the lease, (8) found that the following sums would reasonably compensate the plaintiffs for the following: (a) $500.00 for the expense of removing their business to other premises; (b) $5,200.00 for depreciation in the value of their property as a result of moving; (c) $36,500.00 for their loss of profits; (d) $800.00 for their loss of prepaid rent; (9) found from a preponderance of the evidence that any one of the following acts were done by the defendants with conscious indifference to the rights of the plaintiffs: (a) failure to pay any monies due the plaintiffs for the meals furnished to the ship's crew; (b) shutting

off the power to the plaintiffs' restaurant and club on January 10; (c) in changing the locks and effectively preventing the plaintiffs from carrying on their business after January 21, 1976; (10) that $100,000.00 should be awarded to the plaintiffs as exemplary damages.

After the return of the verdict and before entry of judgment, defendants filed motions under Rule 301, Tex.R.Civ.P., for judgment non obstante veredicto and a motion to disregard jury findings. The motion for judgment non obstante veredicto was to the effect that under the undisputed evidence the plaintiffs maintained a loud band which disturbed the hotel guests, constituting a breach of the lease, which gave the defendants the right to forfeit the lease and the right to immediately reenter and repossess without liability for any of the submitted damages. The motion to disregard jury findings was to the effect that there was no evidence to support the submission of Special Issues Nos. Two, Four, Five, Six, Eight and Ten. At the same time, and again before entry of judgment, the defendants filed a motion for new trial and in the alternative for a remittitur that the award of damages in the amount of $145,-522.83 was grossly excessive under the circumstances particularly with respect to $36,500.00 in lost profits and $100,000.00 exemplary damages.

The trial court then entered final judgment reciting that the defendants' motion to disregard the jury findings to sub-part two of Special Issue No. Eight (the depreciation) and to Special Issue No. Ten (the exemplary damages) should be sustained and that the plaintiffs should have and recover of and from the defendants the sum of $2,022.83 as found by the jury in answer to Special Issue No. Two, the sum of $500.00 as found by the jury in answer to Special Issue No. Four, the sum of $500.00 as found by the jury in answer to sub-part one of Special Issue No. Eight, and the sum of $800.00 as found by the jury in answer to sub-part four of Special Issue No. Eight. The court further found that the amounts found by the jury in answer to sub-part three of Special Issue No. Eight ($36,500.00 for loss of profits) was grossly excessive and the court directed the plaintiffs to remit the sum of $18,250.00 of the sub-part three finding within ten days; otherwise, the defendants' motion for new trial would be granted. It was finally ordered that in the event the plaintiffs did remit the sum of $18,250.00 within ten days, it was ordered, adjudged and decreed that the plaintiffs would have and recover from the defendants the total sum of $22,072.83 with interest as a final judgment.

The plaintiffs thereupon filed their remittitur instrument containing the following paragraph:

Now, however, ZACHARIAS CHARALAMBOUS and wife, CECILIA CHARALAMBOUS, Plaintiffs, in the above-entitled and numbered case, waive and release all portions of the judgment rendered herein on the fourth day of December, 1980, except the sum of $22,072.83 plus costs, and consents to remit the sum of $18,250.00 on said judgment, and consents that judgment for the sum of $22,-072.83 plus costs be entered herein, and that execution issue for that sum only.

Only the plaintiffs have perfected appeal herein, and they present three points and a conditional fourth point. Defendants have presented reply points but no counterpoints or crosspoints.

The plaintiffs' first three points of error complain of the trial court's action in disregarding certain of the jury findings and in refusing to submit an issue to the jury on attorney's fees. The plaintiffs' conditional fourth point complains of the trial court's action in suggesting the remittitur. Defendants' first reply point is to the effect that no appeal lies from the agreed final judgment and the plaintiffs' acceptance thereof, the defendants arguing that the plaintiffs voluntarily accepted the remittitur suggested by the court and specifically waived and released all portions of the judgment except for the $22,072.83 and consented to the entry of judgment in that amount, that the plaintiffs avoided the risk and expense of a new trial and are bound

by their election to accept a reduced judgment rather than to undergo the risk and expense of a new trial, and if they are not bound by their written agreement to accept a reduced amount, that a new trial has been granted to defendants from which no appeal lies.

■ The defendants rely on *City National Bank in Wichita Falls v. Jacksboro National Bank,* 602 S.W.2d 511 (Tex.1980). There, the trial court rendered judgment on a verdict in favor of the Jacksboro National Bank as plaintiff and in so doing overruled the defendant's motion to disregard the jury findings and motions for judgment non obstante veredicto. The defendant then filed a motion for new trial and in the alternative requested a remittitur, and the trial court granted the motion for a new trial conditioned on the plaintiff's noncompliance with the order for remittitur. The plaintiff there tendered a remittitur and appealed. The Supreme Court pointed out that the defendant, the party benefited by the remittitur, did not appeal from the trial court's judgment and that under the provisions of Rule 328, Tex.R.Civ.P., plaintiff, the Jacksboro National Bank, could not appeal the validity of the order of remittitur in the absence of an appeal by the defendant, and sustained the defendant's motion to dismiss the appeal. In that case, the only complaint made by the plaintiff on appeal revolved about the remittitur, and, under Rule 328, before a party making a remittitur may appeal from the order requiring a remittitur, the party for whose benefit the remittitur is made must appeal.

■ In the case before us, plaintiffs' conditional fourth point complains of the remittitur. That complaint is cut off because of Rule 328 and the failure by the defendants to appeal. *City National Bank in Wichita Falls v. Jacksboro National Bank,* supra. The rule does not cut off our consideration of the plaintiffs' first three points which concern Rule 301 prejudgment rulings of the trial court and the failure to submit an issue to the jury on attorney's fees.

Our research has revealed little authority on the precise question if the plaintiff who has accepted the remittitur can appeal on matters other than the remittitur question. It was permitted in the case of *Foster v. Reed,* 623 S.W.2d 494 (Tex.App.—Beaumont 1981, no writ). In that case, the court considered the other points and refused to consider the point complaining of the remittitur. Out-of-state authorities are not of much help as they usually depend upon local statutes or court rules. See: *Miller v. National American Life Ins. Co. of California,* 54 Cal.App.3d 331, 126 Cal.Rptr. 731 (Cal.App.1976); 4 Am.Jur.2d Appeal and Error sec. 245; Annot., 16 A.L.R.3d 1327.

Finally, we do not believe that the wording of the offer of remittitur amounted to a complete settlement agreement which would prohibit the plaintiffs from attacking the judgment before us. The rule is that a party may not attack a judgment to which he has agreed absent allegation and proof of fraud, collusion or misrepresentation. *Hosey v. First National Bank of Goliad,* 595 S.W.2d 629, 630 (Tex.Civ.App.—Corpus Christi 1980, writ dism'd). Here, the offer of remittitur was just that and nothing more. We will consider the plaintiffs' first three points of error.

The first point is to the effect that the trial court erred in disregarding the jury finding of exemplary damages. In considering the point, we first find that the plaintiffs have established by their uncontradicted testimony and remaining unchallenged jury findings that the defendants temporarily cut off the plaintiffs' electricity and gas service on January 10, 1976, which resulted in a monetary loss to the plaintiffs; that the plaintiffs were constructively evicted from their premises from which they suffered damages, moving expenses and substantial loss of profits and that certain of the acts of the defendants, including the first act and the wrongful eviction, were done by the defendants with conscious indifference to the rights of the plaintiffs.

■ The defendants rely primarily upon the rule that exemplary damages are not recoverable in actions for breach of

ordinary commercial contracts even though the breach is brought about capriciously and with malice since the plaintiffs failed to prove that any such breach amounted to an independent tort for which an action would lie. *A.L. Carter Lumber Co. v. Saide,* 140 Tex. 523, 168 S.W.2d 629 (1943); *McDonough v. Zamora,* 338 S.W.2d 507 (Tex.Civ. App.—San Antonio 1960, writ ref'd n.r.e.).

What the defendants overlook is the ever confusing intermingling of concepts of contract law and property law in the landlord tenant relationship and that here the plaintiffs have established a constructive eviction which is a tort. The general requirements for constructive eviction are (1) an intention on the part of the landlord that the tenant shall no longer enjoy the premises which intention may be inferred from the circumstances proven; (2) a material act by the landlord or those acting for him that substantially interferes with the use and enjoyment of the premises for the purpose for which they are let; (3) the act must permanently deprive the tenant of the use and enjoyment of the premises; and (4) the tenant must abandon the premises within a reasonable time after the commission of the act. *Richker v. Georgandis,* 323 S.W.2d 90 (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e.); *Michaux v. Koebig,* 555 S.W.2d 171 (Tex.Civ.App.—Austin 1977, no writ). Such was established here by the undisputed testimony regarding the defendants changing the locks and effectively preventing the plaintiffs from carrying on their business after January 21, from the implied findings of the trial judge in entering judgment for the plaintiffs for their moving and loss of profits damages, and from the failure of the defendants to secure any findings justifying the eviction.

■ The general rule has been stated that a tenant who, being lawfully in possession, is wrongfully evicted by his landlord before the expiration of his term may bring an action for the resulting damages. He is not confined to an action of forceful entry and detainer to regain possession or to an action for breach of covenant. He has a cause of action and may sue in tort by resorting to the ordinary action of trespass where the eviction was forcible. 52 C.J.S. Landlords and Tenants, sec. 460(1), p. 319. See also: Sec. 461(5).

■ *Reavis v. Taylor,* 162 S.W.2d 1030 (Tex.Civ.App.—Eastland 1942), a writ refused case, recognized the tort concept. There, Reavis, by writ of sequestration, ousted the defendant from possession of the premises and threw about 1,500 head of the defendant's sheep from the pasture. There, the court pointed out that the tenant had the option by way of an independent proceeding sounding in tort to recover against all those proximately causing the injury of which he complained. What is important under that case is the recognition that the tenant does have a suit in tort and the holding that the tenant, having been wrongfully ousted or evicted, is entitled to recover any loss or injury which is shown to have been the foreseeable consequence of the eviction.

In *Coefficient Foundation v. Kennedy,* 188 S.W.2d 694 (Tex.Civ.App.—Fort Worth 1945, no writ), and the companion case *Coefficient Foundation v. Edwards,* 188 S.W.2d 699 (Tex.Civ.App.—Fort Worth 1945, no writ), the action was for wrongful eviction where the door and windows were locked and there was a posted eviction notice and exemplary damages sustained by the tenant for the humiliation suffered were awarded. See also the broad terms of Art. 5236, Tex.Rev.Civ.Stat.Ann.

■ In the case before us, the trial court awarded the plaintiffs their actual damages from the eviction and has let stand Special Issue No. 9 and its answer, being that the defendants acted with conscious indifference to the rights of the plaintiffs in making the eviction. The form of the submission of Special Issue No. 9 leaves considerable to be desired. Thus, the inclusion in Issue No. 9 as to the failure to pay the plaintiffs for the meals furnished the ship's crew was for a cause of action relating only to breach of contract and could not be the foundation for the award of exemplary damages. *McDonough v. Zamora,* supra. No attack has been made

upon it and in this case, it is the foundation for the award of exemplary damages in this tort action. Here, the trial court disregarded the finding of $100,000.00 to Special Issue No. 10 under the defendants' argument that the cause of action involved the breach of a commercial contract and that exemplary damages were not recoverable where an independent tort was neither alleged nor proven. Under our holding that the eviction cause of action was in tort and that the unchallenged Special Issue No. 9 became the foundation for the award of exemplary damages, we sustain the plaintiffs' first point to the effect that the trial court erred in disregarding the jury finding of exemplary damages.

The second point complains of the trial court disregarding jury findings on submitted Special Issue No. 8.2 concerning the $5,200.00 of depreciation in the value of the property as a result of the moving, the plaintiffs arguing that there was evidence to support the finding. In reviewing the trial court's action disregarding the answer to the special issue, we will consider the evidence in the light most favorable in support of the jury's verdict. *Frost National Bank v. Nicholas and Barrera,* 534 S.W.2d 927 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.). Without prolonging the opinion, we have examined the record and find no probative evidence in support of the finding. The second point is overruled.

The third point is to the effect that the trial court erred in refusing to submit to the jury the plaintiffs' requested special issue of reasonable and necessary attorney's fees in this cause. The plaintiffs' only claim to attorney's fees as stated in their original petition was made under Article 5236a and 5236d, Tex.Rev.Civ.Stat.Ann., and such statutes apply only to residential leases and have no application to commercial leases. See: 1973 Tex.Gen.Laws, ch. 441, Caption, at 1226, and sec. 4 (Effective Date), at 1228. The plaintiffs failed to plead for attorney's fees under Article 2226, Tex.Rev.Civ.Stat.Ann., and in addition failed to plead or prove formal demand for payment of a claim under the latter statute. The third point is overruled.

The plaintiffs' fourth conditional point has previously been overruled. We reform the judgment of the trial court by adding that the plaintiffs do have and recover of and from the defendants the additional sum of $100,000.00, for the total sum of $122,072.83.