Sue BOELENS, Individually and as Next Friend of Julie Boelens and Jennifer Boelens, Plaintiff-Appellee,

v.

REDMAN HOMES, INC. & Republic Homes of Texas, Inc., Defendants-Appellants.

Sue BOELENS, Individually and as next friend of Julie Boelens and Jennifer Boelens, Plaintiff-Appellant Cross-Appellee,

v.

REDMAN HOMES, INC., Defendant-Appellee Cross-Appellant,

and

Republic Homes of Texas, Inc., Defendant-Appellee.

Nos. 83–1467, 83–1821, 83–1867 and 84–1019.

United States Court of Appeals, Fifth Circuit.

Dec. 20, 1984.

Camp, Jones, O'Neill & Hall, John P. Camp, Daniel L. Bates, Fort Worth, Tex., for Redman.

Hughes & Hill, H. Robert Powell, Clifton T. Hutchinson, Dallas, Tex., for Republic.

Vickery & Webb, Arnold Anderson Vickery, Elizabeth Kilbride, Houston, Tex., for Boelens.

Before WISDOM, RANDALL, and JOLLY, Circuit Judges.

WISDOM, Senior Circuit Judge:

This appeal presents the question whether a personal injury claim based on breach of warranty on a consumer product is cognizable under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312 (1982). The plaintiffs filed suit under the Magnuson-Moss Warranty Act (MMWA) and the Texas Deceptive Trade Practices Act, alleging that they sustained personal injuries and other incidental damages from exposure to formaldehyde fumes within a mobile home manufactured by one defendant and sold by another defendant. The district court ruled that state law determines both the type and the amount of damages that are recoverable under the MMWA. Because Texas law allows the recovery of damages for a personal injury caused by a breach of an implied warranty, the court held that such a claim could be brought in federal court under the MMWA. The jury returned a verdict for the plaintiffs. We hold that personal injury claims arising from breach of warranty are not cognizable under the MMWA. Accordingly, we vacate the judgment and remand with instructions to dismiss the case for lack of subject matter jurisdiction.

## I.

## FACTS

The plaintiffs, Sue Boelens and her minor daughters Jennifer Renea and Juli Marie, purchased a mobile home in March 1980 that was sold by the defendant Republic Homes of Texas, Inc. and manufactured by the defendant Redman Homes, Inc. It was assembled from wood products that contained urea formaldehyde resin as a bonding agent. The United States Department of Housing and Urban Development inspected and certified the home. The seller did not tell Mrs. Boelens that the home contained formaldehyde. While living in the home in Scurry, Texas, from April to September 1980, the plaintiffs experienced various physical problems and noticed an unpleasant odor. Toward the end of the summer of 1980, Juli was hospitalized and diagnosed as having viral hepatitis. Five months later, after learning that Juli had been exposed to formaldehyde in her home, Juli's physician changed his final diagnosis to chemical hepatitis caused by exposure to formaldehyde fumes.

The plaintiffs filed suit, alleging that they sustained personal injuries and incidental economic damages,[1] predicating jurisdiction upon the MMWA, 15 U.S.C. §§ 2301–2312 (1982), and 28 U.S.C. § 1331 (1982). The plaintiffs added pendent claims for strict products liability, negligent failure to warn of a health hazard, breach of express and implied warranties under the Texas Uniform Commercial Code, and violation of the Texas Deceptive Trade Practices Act (DTPA), Tex.Bus. & Comm.Code Ann. §§ 17.41–17.63 (Vernon Supp.1984). The plaintiffs also sought common law pu-

1. The children's pediatrician testified that he believed the girls' problems had been caused by formaldehyde exposure. Three medical specialists retained by the defendants examined the plaintiffs or their medical records and found no evidence of any injury caused by exposure to formaldehyde fumes. Mrs. Boelens admitted that she had suffered each of her symptoms, and that the children had experienced some of their symptoms, before moving into the mobile home.

The Texas Department of Health tested the mobile home for formaldehyde fumes using a Draeger Tube pump and found formaldehyde in quantities of from seven to ten parts per million (ppm). Dr. James Beall, a toxicologist and member of the Federal Panel on Formaldehyde,

testified that most people would find 0.10 ppm of formaldehyde to be uncomfortable in a living environment. There was evidence, however, that the tests were unreliable. The Draeger Tube had not been calibrated for about two years before the test, even though OSHA regulations require calibration immediately before the test. The Draeger Tube test is not certified by NIOSH and is no longer used by the Texas Department of Health. One of the defendants, Redman Homes, also tested the mobile home for formaldehyde and found only 0.1, 0.04, and 0.02 ppm. Dr. Beall testified that he had no confidence in Redman's test results and that he believed Juli's hepatitis was caused by exposure to formaldehyde.

nitive damages and treble damages under the DTPA.

The defendants filed cross-claims for contribution and indemnity against various suppliers of the component parts used in the assembly of the mobile home. One of the third party defendants, Manville Forest Products Corp., filed a motion to dismiss on the ground that the MMWA provides only for the recovery of economic damages and not for the recovery of personal injury damages. Because the plaintiffs in their complaint had asked for economic damages of less than $50,000—the amount-in-controversy requirement of the MMWA—Manville argued that the court should dismiss for lack of subject matter jurisdiction. The court denied Manville's motion in an order concluding that the MMWA federalizes state warranty law and that the plaintiffs' claim under Texas law for personal injury damages for breach of warranty was therefore properly before the court. The district court subsequently approved settlement agreements with some of the third party defendant suppliers, and, over the objections of the defendants, severed the cross-claims and third-party claims against the suppliers.

The case was tried before a jury in April 1983. The jury found that the mobile home was unfit for human habitation and that both of the defendants knowingly violated the DTPA and were grossly negligent in their failure to warn of the formaldehyde fumes in the mobile homes. The jury found actual damages of $178,903.80 and assessed $112,500 in common law punitive damages and $93,750 in discretionary damages under the DTPA. The district court entered judgment for the actual and punitive damages, then later granted a motion for JNOV with respect to $20,000 of future medical expenses. The district court also awarded $236,854.94 to the plaintiffs for attorneys fees, costs, and expenses, and amended the judgment to allow the defendants a $120,000 credit against actual damages on account of the plaintiffs' pretrial settlements with third party suppliers of components for the mobile home. This appeal followed.

## II.

### A CLAIM FOR PERSONAL INJURY DAMAGES FOR BREACH OF WARRANTY IS NOT COGNIZABLE UNDER THE MMWA

#### A. Overview of the MMWA

The Magnuson-Moss Warranty Act[2] was Congress's first comprehensive attempt to deal at the federal level with problems of consumer warranties.[3] "The draftsmen believed that warranties on consumer products often were too complex to be understood, too varied for consumers to make intelligent market comparisons, and too restrictive for meaningful warranty protection." Schroeder, *Private Actions under the Magnuson-Moss Warranty Act,* 66 Calif.L.Rev. 1, 2 (1978). As Judge Jesse E. Eschbach put it, "One of the prime concerns addressed in the Act was the warranty wherein the large print giveth but the small print taketh away." *Gorman v. Saf-T-Mate, Inc.,* N.D.Ind.1981, 513 F.Supp. 1028, 1035. The Act creates minimum disclosure standards for written consumer product warranties and defines minimum content standards for such warranties. The Act does not require that a seller give a warranty on a consumer product, but if a warranty is given, it must comply with the terms of the Act.

A written warranty for a consumer product costing more than ten dollars is subject to the following substantive obligations of the Act. The warranty must be "clearly and conspicuously" designated as a "full"

---

**2.** Title I of the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, Pub.L. No. 93–637, 88 Stat. 2183 (1975) (Title I codified at 15 U.S.C. §§ 2301–2312 (1982)). Title II of the Act expands the scope of the Federal Trade Commission's jurisdiction and power to seek remedial measures.

**3.** Denicola, *The Magnuson-Moss Warranty Act: Making Consumer Product Warranty a Federal Case,* 44 Fordham L.Rev. 273, 273 (1975).

or a "limited" warranty. 15 U.S.C. § 2303 (1982). A "full" warranty must comply with certain minimum standards:

1. The party obligated under a full warranty must remedy defective products without charge. *Id.* § 2304(a)(1).

2. No limitation may be imposed on the duration of any state law implied warranty on the product. *Id.* § 2304(a)(2).

3. The warrantor may not exclude or limit consequential damages for breach of any written or implied warranty on the product, unless such exclusion or limitation conspicuously appears on the face of the warranty. *Id.* § 2304(a)(3).

4. If the product or a component thereof is defective after a reasonable number of attempts by the warrantor to remedy the defects, the warrantor must permit the consumer to elect either a refund or replacement without charge of the product. *Id.* § 2304(a)(4).

Although "limited" warranties are not subject to these standards, the Act does provide that the terms of a limited warranty may limit the duration of implied warranties only to the duration of the written warranty, and such limitation must be "conscionable" and "set forth in clear and unmistakable language and prominently displayed on the face of the warranty." *Id.* § 2308. Finally, subject to rules promulgated by the Federal Trade Commission, both full and limited warranties must "fully and conspicuously disclose in simple and readily understood language [their] terms and conditions". *Id.* § 2302(a).[4]

The MMWA confers both public and private enforcement powers. The Federal Trade Commission or the Attorney General may sue to restrain any warrantor from making a deceptive warranty or from violating the Act. *Id.* § 2310(c). The FTC may treat a violation of the Act as an unfair or deceptive trade practice under the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) (1982). 15 U.S.C. § 2310(b) (1982). The private enforcement rights conferred by the MMWA are perhaps the most far-reaching aspects of the statute.[5] The scope of those rights is at issue in this case. We now turn to that issue.

### B. The Scope of Private Enforcement Rights Under the MMWA

The provisions of the MMWA that create a private cause of action permit a "consumer"[6] to sue a warrantor for (1) a violation

---

**4.** The Act also contains an antitying provision that prohibits, with certain exceptions, a warrantor from conditioning a written or implied warranty on the consumer's using any article or service that is identified by brand, trade, or corporate name, unless such article or service is provided without charge under the warranty. 15 U.S.C. § 2302(c) (1982).

**5.** Schroeder, *Private Actions under the Magnuson-Moss Warranty Act,* 66 Calif.L.Rev. 1, 3 (1978).

**6.** The Act defines "consumer" to mean "a buyer (other than for purposes of resale) of any consumer product ...." 15 U.S.C. § 2301(3) (1982). A "consumer product" is "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed)." *Id.* § 2301(1).

The defendants argue that the district court lacked subject matter jurisdiction of this case because a mobile home is not a "consumer product" within the meaning of the MMWA. Because of our holding that the district court lacked subject matter jurisdiction for other reasons, we do not reach this issue. We note, however, that the Federal Trade Commission has concluded that a mobile home is a "consumer product" under the MMWA. *See* Federal Trade Commission Advisory Opinion, Keller, Thoma, Toppin & Schwarze, P.C., 42 Fed.Reg. 37440, 37441 (1977) (Section 700.4 of the FTC regulations under the MMWA applies to "all consumer products sold with mobile homes, which are themselves consumer products"); Federal Trade Commission, Magnuson-Moss Warranty Act Implementation and Enforcement Policy, 40 Fed.Reg. 25721, 25722 (1975) ("Consumer product as defined in the Act includes the following items, and any other items that are tangible personal property and are normally used for personal, family, or household purposes: boats, photographic film and chemicals, clothing, appliances, jewelry, furniture, typewriters, motor homes, automobiles, *mobile homes,* vehicle parts and accessories, stereos,

of the substantive provisions of the Act, or (2) breach of a written or implied warranty. Specifically, in § 2310 the Act provides:

(d)(1) Subject to subsection (a)(3) [7] and (e) of this section, a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—

(A) in any court of competent jurisdiction in any State or the District of Columbia; or

(B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection.

. . . . .

(3) No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection—

(A) if the amount in controversy of any individual claim is less than the sum or value of $25;

(B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or

(C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

(e) No action (other than a class action or an action respecting a warranty to which subsection (a)(3) of this section applies) may be brought under subsection (d) of this section for failure to comply with any obligation under any written or implied warranty or service contract . . . unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply. . . .

The plaintiffs' amended complaint in this case makes a claim under the MMWA only for breach of warranty; no claim for breach of the substantive obligations of the Act is asserted. The plaintiffs argue that § 2310(d) of the MMWA authorizes suit in federal court by a consumer against a warrantor for breach of any implied warranties arising under state law. They maintain that any damages for such breach, including personal injury damages, that are recoverable under state law may also be recovered under the MMWA. Texas law allows recovery of personal injury damages for breach of an implied warranty under the Texas Uniform Commercial Code. *Garcia v. Texas Instruments, Inc.,* 610 S.W.2d 456, 462 (Tex.1980). The plaintiffs therefore conclude that their personal injury claim was properly brought under the MMWA.

The defendants respond that § 2311(b)(2) explicitly precludes the recovery of personal injury damages arising out of a breach of an implied warranty; clause B clarifies the congressional intent that the Act not operate as a preemptive statute. That section provides:

Nothing in this chapter (other than sections 2308 and 2304(a)(2) and (4) of this title) shall (A) affect the liability of, or impose liability on, any person for personal injury, or (B) supersede any provision of State law regarding consequential damages for injury to the person or other injury.

15 U.S.C. § 2311(b)(2) (1982). The plaintiffs read this section to mean only that the MMWA itself creates no new substantive right to personal injury damages, but if

---

carpeting, small aircraft, toys, and food.") (emphasis added). Because the FTC is vested with various rulemaking authority under the MMWA, its views concerning the scope of the MMWA would be entitled to great weight.

**7.** Section 2310(a)(3) provides that if a warrantor establishes an informal dispute settlement procedure that satisfies the applicable rules of the FTC, and if the warrantor incorporates in a written warranty a requirement that the con-

sumer resort to such procedure, then the consumer may not commence a civil action under § 2310(d) unless he or she initially resorts to such procedure. The Act declares it is the policy of Congress "to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms." 15 U.S.C. § 2310(a)(1) (1982).

state law provides that right, it is cognizable under the MMWA.

The only two reported decisions that have squarely faced the issue have held that the MMWA does not create a federal cause of action for state law personal injury claims for breach of warranty. *See Bush v. American Motors Sales Corp.*, D.Colo.1984, 575 F.Supp. 1581, 1582; *Gorman v. Saf-T-Mate, Inc.*, N.D.Ind.1981, 513 F.Supp. 1028, 1032–36. The district court in this case declined to follow *Saf-T-Mate*. The court relied instead on *MacKenzie v. Chrysler Corp.*, 5 Cir.1979, 607 F.2d 1162, for its ruling that a federal court "must look to state law to determine the amount and type of damages available to the plaintiffs under the Magnuson-Moss Warranty Act." [8] Record at 949. We must therefore decide whether *MacKenzie* controls this case and, if not, what is the proper interpretation of § 2311(b)(2) of the MMWA.

*1. MacKenzie is Not Dispositive of This Case*

In *MacKenzie*, the plaintiff had purchased a station wagon manufactured by the defendant. The car had numerous problems that required the plaintiff to return it to the dealer several times for repair. The plaintiff sued the manufacturer of the car for breach of an express warranty and for breach of implied warranties under Mississippi law. The district court refused to submit an instruction to the jury regarding the MMWA, because the court found that the MMWA was not applicable to the warranty involved in the case, and that even if it were, it would overlap the implied warranty of merchantibility under Mississippi law, thereby making such an

instruction redundant. The plaintiff alleged that this refusal was error.

This Court held on appeal that, because the plaintiff "would have been entitled to recover no more under the Magnuson-Moss Warranty Act than he did recover under the court's instructions regarding the express and implied warranties set out by Mississippi law, ... the court's failure to grant [the plaintiff's] requested charge, if error, was harmless and therefore insufficient to require reversal." *MacKenzie v. Chrysler Corp.*, 5 Cir.1979, 607 F.2d 1162, 1166. We noted that the MMWA "is virtually silent as to the amount and type of damages which may be awarded for breach of an express limited warranty." *Id.* We stated, however, that "the legislative history clearly implies that a resort to state law is proper in determining the applicable *measure* of damages under the Act." *Id.* (emphasis added). We then concluded that the district court's instructions concerning the *measure* of the plaintiff's damages were correct under Mississippi law. *Id.* at 1166–67.

No claim for personal injury damages was made in *MacKenzie*. The plaintiff sought only damages for economic loss. No issue was raised whether this *type* of damages was recoverable under the MMWA. Indeed, many cases make clear that damages for economic loss—usually measured under the relevant state's Uniform Commercial Code as the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted—are recoverable under the

---

**8.** The district court cited four other cases to support its conclusion that the MMWA authorizes recovery of damages for breach of implied warranty in accordance with the damages available under the applicable state law: *Lieb v. American Motors Corp.*, S.D.N.Y.1982, 538 F.Supp. 127; *Feinstein v. Firestone Tire & Rubber Co.*, S.D.N.Y.1982, 535 F.Supp. 595; *Skelton v. General Motors Corp.*, N.D.Ill.1980, 500 F.Supp. 1181, *rev'd on other grounds*, 7 Cir.1981, 660 F.2d 311, *cert. denied*, 1982, 456 U.S. 974, 102 S.Ct. 2238, 72 L.Ed.2d 848; *Novosel v. Northway Motor Car Corp.*, 1978, N.D.N.Y.1978, 460 F.Supp. 541. None of these cases, however,

involved a claim for personal injury damages. In *Lieb* and *Novosel*, the court held that one must look to state law to determine whether *punitive damages* are available for the plaintiff's breach of warranty claim. *See Lieb*, 538 F.Supp. at 132–33; *Novosel*, 460 F.Supp. at 544–45. The *Feinstein* and *Skelton* cases held that a federal court must look to state law to determine the *scope* of an implied warranty that is the subject of a suit under the MMWA. *Feinstein*, 535 F.Supp. at 602–03, 605; *Skelton*, 500 F.Supp. at 1191. Thus, none of these cases squarely faced the issue before us.

MMWA. *See, e.g., In re General Motors Corp. Engine Interchange Litigation,* 7 Cir., 594 F.2d 1106, 1132 n. 44, *cert. denied,* 1979, 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95; *Skelton v. General Motors Corp.,* N.D.Ill.1980, 500 F.Supp. 1181, 1191, *rev'd on other grounds,* 7 Cir.1981, 660 F.2d 311, *cert. denied,* 1982, 456 U.S. 974, 102 S.Ct. 2238, 72 L.Ed.2d 848; *Novosel v. Northway Motor Car Corp.,* N.D.N.Y. 1978, 460 F.Supp. 541, 545.[9] Given that damages for economic loss may be assumed to be recoverable under the MMWA, we held in *MacKenzie* that a resort to state law was proper to determine "the applicable measure of damages". *MacKenzie,* 607 F.2d at 1166. We had no occasion to decide what *types* of damages are cognizable under the MMWA or to consider the effect of § 2311(b)(2) on liability for personal injury under the MMWA. We therefore conclude that *MacKenzie* is not dispositive of the issue before us.

### 2. The Scope of Personal Injury Liability Under the MMWA

Section 2311(b)(2) of the MMWA provides that "[n]othing in this chapter (other than sections 2308 and 2304(a)(2) and (4) of this title) shall (A) affect the liability of, or impose liability on, any person for personal injury ...." It is evident from this language that, except for the sections recited in the parentheses, the MMWA itself creates no *new* cause of action for personal injury damages. The excepted sections, however, do affect potential liability for personal injury. Section 2308 forbids disclaimers of implied warranties and § 2304(a)(2) prohibits full warrantors from limiting the duration of implied warranty coverage.[10] Turning to the legislative history, we note that "[s]ection 108 of the bill [§ 2308 of 15 U.S.C.] (relating to prohibition on disclaimers on implied warranties) could be read to impose liability on persons to the extent it prohibits the disclaimer of implied warranties." S.Conf.Rep. No. 1408, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 7702, 7755, 7760. If, therefore, a warrantor violated the provisions of either § 2308 or § 2304—for example, by disclaiming implied warranties or by limiting the duration of implied warranty coverage in a warranty purporting to be a "full" warranty—the warrantee could sue for the violation and recover damages for personal injury because the express exceptions to § 2311(b)(2) would remove such a suit from the reach of that section. *See* Denicola, *The Magnuson-Moss Warranty Act: Making Consumer Product Warranty a Federal Case,* 44 Fordham L.Rev. 273, 290, 292 (1975). Such a suit, however, would be an action under § 2310(d)(1) for failure "to comply with any obligation under this chapter", because §§ 2308 and 2304 create substantive obligations. It would *not* be a suit "under a written warranty [or] implied warranty" within the meaning of § 2310(d)(1).

By contrast, where there has not been a violation of the substantive provisions of §§ 2308 or 2304, the exceptions to § 2311(b)(2) are inoperative and the express language of § 2311(b)(2) bars liability for personal injury. We therefore conclude that § 2311(b)(2) sets up a dichotomy between personal injury claims based on a breach of the substantive provisions of §§ 2308 and 2304, which are cognizable

---

**9.** *See generally* Strasser, *Magnuson-Moss Warranty Act: An Overview and Comparison with UCC Coverage, Disclaimer, and Remedies in Consumer Warranties,* 27 Mercer L.Rev. 1111, 1143–44 (1976) (discussing remedies under the Uniform Commercial Code that will typically be available to a consumer in a suit under the MMWA for breach of warranty).

**10.** We agree with the district court in *Saf-T-Mate* that § 2304(a)(4) evidently was included in § 2311(b)(2) because of an error in draftsmanship; this provision is concerned solely with informal repair or replacement remedies and clearly has no relevance to situations involving personal injury damages. This court concludes that § 2311(b)(2) was intended to refer not to § 2304(a)(4), but, rather, to § 2304(a)(3), which requires that limitations on liability for consequential damages be conspicuously displayed on the warranty instrument. *Gorman v. Saf-T-Mate,* N.D.Ind.1981, 513 F.Supp. 1028, 1035.

under the MMWA, and personal injury claims based only on a breach of warranty, which are *not* cognizable under the MMWA.[11] Our conclusion is confirmed by the legislative history of the Act:

> The disclaimer on the imposition of liability contained in section 111(b)(2)(A) [§ 2311(b)(2)(A) of 15 U.S.C.] does not operate to negate the provisions of section 108 [§ 2308 of 15 U.S.C.] since the imposition of liability language relates to the consequences flowing from the existence of a warranty or service contract.

S.Conf.Rep. No. 1408, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad. News 7755, 7760. This passage impels the conclusion that the language of § 2311(b)(2)(A) prohibiting the imposition of liability for personal injury applies to claims "flowing from the existence of a warranty", i.e., to claims based directly upon a breach of warranty (express or implied), as opposed to claims based upon a violation of the substantive provisions of the MMWA. Therefore, because § 2308 is a substantive provision, the passage concludes that the "disclaimer on the imposition of liability contained in [§ 2311(b)(2)(A)] does not operate to negate the provisions of [§ 2308]".

Our conclusion that the MMWA does not create a federal cause of action for personal injury damages based solely on a breach of warranty is buttressed by two additional considerations. First, one of the main purposes of the MMWA was to create effective remedies for an aggrieved consumer with a small claim for which a remedy might not otherwise exist. For example, the Senate Report noted that "[b]ecause enforcement of the warranty through the courts is prohibitively expensive, there exists no currently available remedy for consumers to enforce warranty obligations." S.Rep. No. 151, 93d Cong., 1st Sess. 7 (1973). Congress realized that the ultimate solution to these enforcement problems would not be found wholly within the overburdened judicial system.[12] Accordingly, § 2310(a)(1) of the MMWA states that "Congress hereby declares it to be its policy to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms." Section 2310(a)(3) requires that if a warrantor sets up an informal dispute resolution procedure that satisfies FTC rules, the warrantor may require that a consumer resort to such procedure before commencing a suit for relief.

Moreover, § 2310(d)(3)(B) allows the claims of consumers to be aggregated in a class action to satisfy the $50,000 amount-in-controversy requirement of that section.

---

**11.** Professor Schroeder concludes that a federal cause of action for personal injury damages exists under the MMWA:

> Although the focus of Magnuson-Moss is on the "lemon," the consumer product that fails to function properly, the Act also has implications for personal injury cases. The Act states: "Nothing in this chapter (other than sections 2308 and 2304(a)(2) and (4) ...) shall ... affect the liability of, or impose liability on, any person for personal injury ...." If the parenthetical phrase had been omitted, nothing in the Act would impose liability for personal injuries. But both of the sections excepted parenthetically, section 2308 (section 108 of the Act), which forbids disclaimers of implied warranties, and section 2304 (section 104 of the Act), which prohibits full warrantors from limiting the duration of implied warranty coverage, can affect liability for personal injuries by making a cause of action for breach of implied warranty available. Since the Act, in turn, allows a private action for

breach of implied warranty, the Magnuson-Moss Act does permit, as a matter of federal law, the recovery of damages for personal injury.

Schroeder, *supra* note 5, at 27–28. We agree with Professor Schroeder that §§ 2308 and 2304 "can affect liability for personal injuries by making a cause of action for breach of implied warranty available," because those sections prohibit disclaimers of implied warranties. At issue, however, is whether such an action may be brought in federal court. Professor Schroeder's concluding sentence seems to assume the answer to this question by flatly stating that the MMWA "allows a private action for breach of implied warranty" without qualification. His conclusion is therefore circular. Moreover, this reading of § 2311(b)(2) seems to cause the exceptions to swallow the rule entirely.

**12.** Denicola, *supra* note 3, at 293.

Each individual claim need be only $25.[13] 15 U.S.C. § 2310(d)(3)(A) (1982). In the legislative history it was brought out, in discussing class actions under the Act, that § 2310(d) "is remedial in nature and is designed to facilitate relief which would otherwise not be available as a practical matter for individual consumers." H.R.Rep. No. 1107, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 7702, 7724. The Act therefore creates a remedy for cases in which a large number of consumers have purchased an unsatisfactory product, but the price of the product is so small that it would not be practicable for an individual consumer to litigate for damages. Section 2310(d)(2) provides that consumers who prevail in actions under the MMWA may be allowed by the court to recover cost and expenses, including attorneys fees.

The legislative history of the Act, a close analysis of its language, and consideration of its objectives leads this Court inexorably to the conclusion that claims for personal injury damages are not the kind of claims for which a remedy would be otherwise unavailable. These claims are generally of sufficient size to make it practicable and reasonable to litigate them. Certainly this is true of those claims that would satisfy the $50,000 amount-in-controversy require-

ment of the MMWA.[14] State courts provide an effective forum, and a plaintiff can usually have the case brought on a contingency fee basis. Congress therefore had no reason that we can ferret out for bringing personal injury claims into the federal courts other than through diversity jurisdiction. We conclude that our reading of § 2311(b)(2) is consistent with the overall purpose of the structure of remedial measures created by the Act.

The second consideration that supports our construction of § 2311(b)(2) is the rule that statutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction. *See Phillips v. Osborne*, 9 Cir.1968, 403 F.2d 826, 828; *F & S Construction Co. v. Jensen*, 10 Cir.1964, 337 F.2d 160, 161; *Russell v. New Amsterdam Casualty Co.*, 8 Cir.1964, 325 F.2d 996, 998. The plaintiffs' construction of the MMWA would allow virtually any state products liability action for personal injury damages not related to the workplace to be brought into federal court, subject only to the amount-in-controversy requirement. Absent a clear statement of intention from Congress, there is a presumption against a statutory construction that would significantly affect the federal-state balance.[15]

---

**13.** Section 2310(d)(3)(C) requires that if an action is brought as a class action, there must be at least 100 named plaintiffs.

**14.** One commentator infers from the size of the amount-in-controversy requirement that personal injury claims were intended to be reached by the MMWA.

The jurisdictional requirements in section [2310(d)(3)] lend support to the argument that damages due to personal injury and other consequential damages are recoverable in an action under subsection (d). Section [2310(d)(3)(B)] states that the amount in controversy must equal at least $50,000 in order to bring suit in federal court, and the language of subsection (d)(3)(C) indicates the draftsmen did not believe that all such suits would be class actions. If the damages recoverable in a section [2310(d)] action were limited to the loss of the bargain, no individual claim would be likely to approach the $50,000 figure.

Denicola, *supra* note 3, at 297 n. 107. The legislative history, however, suggests that Congress believed that most of the actions brought under the MMWA would in fact be class actions. "The purpose of these jurisdictional provisions [of § 2310(d)(3)] is to avoid trivial or insignificant actions being brought as class actions in the federal courts." H.R.Rep. No. 1107, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 7702, 7724. Congress might well have believed that grievances brought by an individual consumer would be largely channeled through the informal dispute resolution mechanisms encouraged by § 2310(a).

**15.** The parties have devoted considerable energy in this appeal to arguing the following passage in the legislative history of the MMWA concerning § 2311(b)(2):

[Section 2311(b)(2)] provides that nothing in title I "shall affect the liability of, or impose liability on, any person for personal injury, or supersede any provision of State law regarding consequential damages for injury to the person or other injury." Thus a third party warrantor or other warrantor of a consumer

*United States v. Bass,* 1971, 404 U.S. 336, 349–50, 92 S.Ct. 515, 523, 30 L.Ed.2d 488, 497–98; *Apex Hosiery Co. v. Leader,* 1940, 310 U.S. 469, 513, 60 S.Ct. 982, 1002, 84 L.Ed. 1311, 1334.[16] We refuse to read the jurisdictional provisions of the MMWA as broadly as the plaintiffs urge us, especially in the face of the express limiting language of § 2311(b)(2).

### 3. Summary .

 We agree with the conclusion of the district court in *Saf-T-Mate:*

Section 2311(b)(2) states expressly what §§ 2304 and 2308 fairly imply: Congress was content to let the question of personal injury products liability remain a matter of state-law causes of action, except to the extent that certain substantive provisions in the Magnuson-Moss

product is not liable under title I of the bill for damages resulting from personal injury (either direct or consequential), but he could still be liable if State law imposed liability. S.Conf.Rep. No. 1408, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 7755, 7760. If the last clause of the last sentence of this passage, referring to state law, were not present, the passage would clearly support our construction of § 2311(b)(2). The parties disagree as to the meaning of the final clause. The plaintiffs contend that it means that if state law imposes liability for personal injury, then the defendant is also liable under the MMWA. The defendants maintain that the clause simply states the obvious fact that a warrantor could be liable under state law (i.e., in state court), although not under the MMWA (in federal court).

We find this passage so ambiguous that we cannot say that it cuts one way or the other. The district court in *Saf-T-Mate* offered this interpretation:

The most plausible reading of the conference committee observation is that in cases where a plaintiff seeking personal injury damages is suing on the basis of an alleged violation of one of the provisions incorporated by reference in § 2311(b)(2), the scope of personal injury liability will be determined in accordance with state law unless portions of the Act supersede such aspects of state law.

*Gorman v. Saf-T-Mate,* N.D.Ind.1981, 513 F.Supp. 1028, 1035 n. 8. Regardless whether this interpretation of the passage is correct, we agree with the court's conclusion: "[The] reference [to state law in the final clause of the passage] could be interpreted in several ways,

Act overrule contrary state laws relating to the warrantor's ability to disclaim personal injury liability.

*Gorman v. Saf-T-Mate, Inc.,* N.D.Ind.1981, 513 F.Supp. 1028, 1035. We hold that § 2311(b)(2) of the MMWA prohibits claims arising from personal injury based solely on a breach of warranty, express or implied. One may, however, recover personal injury damages under the MMWA where there has been a violation of the substantive provisions of § 2308 (prohibiting disclaimer of implied warranties), § 2304(a)(2) (prohibiting full warrantors from limiting the duration of implied warranty coverage) or § 2304(a)(3) [17] (prohibiting full warrantors from excluding or limiting consequential damages unless such exclusion or limitation conspicuously appears on the face of the warranty).[18]

but where the terms of the statute are clear and the legislative history is highly ambiguous, it seems safer to adopt the interpretation of the legislative history that is most consistent with the plain language of the statute." *Id.*

**16.** In *Apex Hosiery,* the Supreme Court observed:

If ... we were to hold that a local factory strike, stopping production and shipment of its product interstate, violates the Sherman law, practically every strike in modern industry would be brought within the jurisdiction of the federal courts, under the Sherman Act, to remedy local law violations.... The maintenance in our federal system of a proper distribution between state and national governments ... of remedies private and public for public wrongs is of far-reaching importance. An intention to disturb the balance is not lightly to be imputed to Congress. 310 U.S. at 513, 60 S.Ct. at 1002, 84 L.Ed. at 1334.

**17.** *See supra* note 10. ·

**18.** Section 2310(e), which applies to both state and federal court actions, provides that no action for breach of warranty may be instituted under § 2310(d) unless the warrantor has first been afforded a "reasonable opportunity to cure" the pertinent "failure to comply" with the warranty. Actions for breach of the substantive obligations of the MMWA, however, are not reached by § 2310(e). Claims for personal injury based on a breach of the provisions of §§ 2308, 2304(a)(2), or 2304(a)(3) are therefore not subject to the opportunity-to-cure limitation.

## III.

### THE PLAINTIFFS HAVE NOT MET THE AMOUNT IN CONTROVERSY REQUIREMENT OF THE MMWA

*A. State Law Determines Whether Punitive Damages are Available Under the MMWA*

■ Section 2310(d)(3)(B) provides that no claim is cognizable under the MMWA unless the amount in controversy is at least $50,000. To determine whether the amount in controversy requirement is satisfied, we must look to the complaint. The amount stated in the complaint is itself dispositive of jurisdiction if the claim is apparently made in good faith, unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount. *E.g., St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 1938, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845, 848; *Dassinger v. South Central Bell Telephone Co.*, 5 Cir.1974, 505 F.2d 672, 673–74.

The amended complaint in this case seeks the following damages: (1) $2,479.20 for past medical expenses of Juli and Jennifer Boelens; (2) an unspecified amount for alleged future medical expenses of Juli and Jennifer Boelens; (3) $600,000, $150,000, and $100,000, respectively, for Juli, Jennifer, and Sue Boelens for physical pain, mental anguish, physical impairment, the loss of enjoyment and loss of quality of life, and increased risk of cancer; (4) $1,000,000 in punitive damages; (5) $15,946.33 for the lost investment in the mobile home and for additional costs of alternative housing for the plaintiffs up to the time of trial; (6) $25,000 for the displacement of the plaintiffs from their home and the anxiety and inconvenience caused thereby; and (7) an unspecified amount of attorneys fees.

■ These claims for damages may be grouped for jurisdictional purposes into the following categories:

1. Damages for personal injury of $877,479.20 (items 1–3 and 6).

2. Economic loss damages of $15,946.33 (item 5).

3. Punitive damages of $1,000,000 (item 4).

4. Attorneys fees (item 7).

Damages for economic loss are clearly recoverable under the MMWA, and those damages may be used to satisfy the amount-in-controversy requirement. Because of our holding that personal injury damages for breach of warranty are not recoverable under the MMWA, these damages may not be counted toward satisfaction of the amount-in-controversy requirement. Nor may the claim for attorneys fees be used to satisfy the jurisdictional amount, because § 2310(d)(3) requires that the amount in controversy be calculated "exclusive of interests and costs". Attorneys fees are "costs" within the meaning of § 2310(d)(3). *Saval v. BL Ltd.*, 4 Cir. 1983, 710 F.2d 1027, 1032–33. The plaintiffs can satisfy the amount-in-controversy requirement of $50,000 only if their claim for punitive damages may be counted along with the claim for economic loss.

■ Punitive damages are recoverable under the MMWA for breach of warranty only if they may be recovered in a breach of warranty action brought under the governing state law. *Saval v. BL Ltd.*, 4 Cir.1983, 710 F.2d 1027, 1033; *Schaffer v. Chrysler Corp.*, N.D.Ind.1982, 544 F.Supp. 182, 184–85; *Lieb v. American Motors Corp.*, S.D.N.Y.1982, 538 F.Supp. 127, 132–33; *Novosel v. Northway Motor Car Corp.*, S.D.N.Y.1978, 460 F.Supp. 541, 545. The parties agree that the relevant state law in this case is that of Texas. We therefore must examine whether Texas law permits the recovery of punitive damages for breach of warranty.

*B. Texas Law Does Not Permit Recovery of Punitive Damages For Breach of Warranty*

■ Texas law follows the rule that "exemplary damages cannot be recovered for a simple breach of contract, where the breach is not accompanied by a tort, even though the breach is brought about capri-

ciously and with malice." *A.L. Carter Lumber Co. v. Saide*, 140 Tex. 523, 168 S.W.2d 629, 631 (1943). "Texas law is clear that exemplary damages cannot be awarded for a contract action." *Fredonia Broadcasting Corp. v. RCA Corp.*, 5 Cir. 1973, 481 F.2d 781, 804, *cert. denied*, 1978, 439 U.S. 859, 99 S.Ct. 177, 58 L.Ed.2d 167. "This case falls into the category of a suit for breach of contract, for which the proper redress is money judgment for actual damages, and for which exemplary damages are not authorized." *Graham v. Turner*, 472 S.W.2d 831, 838 (Tex.Civ.App.1971). The rules that govern actions for breach of warranty are the same as those governing actions for breach of contract. *Canon, U.S.A. v. Carson Map Co.*, 647 S.W.2d 321, 323 (Tex.App.1982); *see Henderson v. Ford Motor Co.*, 547 S.W.2d 663, 669 (Tex.Civ.App.1977).

When, however, "a distinct, wilful tort is alleged and proved in connection with a suit upon a contract, one may recover punitive damages". *City Products Corp. v. Berman*, 610 S.W.2d 446, 450 (Tex.1980). The plaintiffs argue that the jury's finding that the defendants were grossly negligent for their failure to warn the plaintiffs about formaldehyde fumes would support an award under Texas law of punitive damages as a contemporaneous tort with the breach of an implied warranty. The plaintiffs conclude that their claim for punitive damages may therefore be used to satisfy the jurisdictional amount in controversy.

We do not agree. It is evident from the cases that Texas law awards punitive damages for the accompanying tort, not for the breach of warranty itself. To recover punitive damages, "an independent tort" must be separately pleaded and proved. *Amoco Production Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex.1981); *see Texas Power & Light Co. v. Barnhill*, 639 S.W.2d 331, 334 (Tex.App.1982). Compare *Canon, U.S.A. v. Carson Map Co., Inc.*, 647 S.W.2d 321, 323–24 (Tex.App.1982), holding that the defendant's actions in breach of warranty "lacked the requisite distinct tort aspects necessary as a predicate for the award of exemplary damages". "[T]he exemplary damages are allowed not for the breach but for the tort." *National Finance Co. v. Fregia*, 78 S.W.2d 1081, 1082 (Tex.Civ.App. 1935). For example, in *Koenning v. Manco Corp.*, 521 S.W.2d 691 (Tex.Civ.App. 1975), the plaintiff claimed that the defendants' actions with respect to a natural gas lease constituted both a breach of contract and tortious fraud and gross negligence. The court held that, because the tort claim, which formed the basis upon which the plaintiff might recover exemplary damages, was barred by the statute of limitations, the only right left upon which the plaintiff could sue was that created by contract, and exemplary damages were therefore not available. *Id.* at 703.

The plaintiffs rely on *Charalambous v. Jean Lafitte Corp.*, 652 S.W.2d 521 (Tex. App.1983), to support their contention that Texas law allows recovery of punitive damages for acts in breach of contract that "contemporaneously" constitute a tort. In *Charalambous*, the plaintiffs sued for breach of a commercial lease. The trial court granted the defendants' motion to disregard the jury finding of exemplary damages on the ground that exemplary damages are not recoverable in actions for breach of ordinary commercial contracts. On appeal, the court reversed and awarded exemplary damages because it found that "the plaintiffs have established a constructive eviction which is a tort." *Id.* at 526. It is clear, however, that the court awarded exemplary damages for the tort alone:

> Under our holding that *the eviction cause of action was in tort* and that the unchallenged Special Issue No. 9 [relating to whether the defendants acted with conscious indifference to the rights of the plaintiffs in making the eviction] became the foundation for the award of exemplary damages, we sustain the plaintiffs' first point to the effect that the trial court erred in disregarding the jury finding of exemplary damages.

*Id.* at 527 (emphasis added).

We conclude that Texas courts distinguish a contract or warranty action

from a tort action and award punitive damages only for the tort, if it has been independently pleaded and proved. Texas law does not allow punitive damages for a breach of warranty per se. The plaintiffs in the case before us therefore may not count their claim for punitive damages toward satisfaction of the jurisdictional amount in controversy for their claim for breach of warranty. Although the plaintiffs have also pleaded an independent cause of action in tort—for which punitive damages are cognizable under Texas law—that cause of action is a pendent state law claim and cannot be used to confer jurisdiction.[19]

## IV.

## CONCLUSION

The plaintiffs' claim for damages for personal injury arising from breach of warranty is not cognizable under the MMWA. Because Texas law does not allow punitive damages for a breach of warranty per se and because attorneys fees are "costs" within the meaning of § 2310(d)(3), only the plaintiffs' claim for economic loss may be counted toward satisfaction of the jurisdictional amount. Because that claim is for $15,946.33, the plaintiffs do not meet the $50,000 amount-in-controversy requirement. The only federal question raised by the plaintiffs was the cause of action for breach of warranty under the MMWA. That claim did not confer jurisdiction; the pendent state law claims therefore must be dismissed. "Even where substantial time and resources have been expended in the trial of an action in federal court, pendent state claims must be dismissed if it later is determined that there never existed a federal claim sufficient to invoke the jurisdiction of the federal court." *Crane Co. v. American Standard, Inc.,* 2 Cir.1979, 603 F.2d 244, 254.

The judgment of the district court is VACATED and the case is remanded with instructions to dismiss for lack of subject matter jurisdiction.

---

19. Similarly, because the plaintiff's claim under the DTPA is a pendent state law claim, their request for treble damages under that Act cannot be used to satisfy the jurisdictional amount.